# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ESTER LELCHOOK, *et al.*,

                      Plaintiffs,

-against-

LEBANESE CANADIAN BANK SAL, *et al.*,

                      Defendants.

Case No. 18-cv-12401 (GBD)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS LEBANESE CANADIAN BANK AND MOHAMED HAMDOUN

November 29, 2021

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Counsel for Defendants Lebanese Canadian Bank SAL and Mohamed Hamdoun*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

ARGUMENT ......................................................................................................................... 7

I.      LEGAL STANDARD ................................................................................................ 7

II.     PLAINTIFFS' FIRST CAUSE OF ACTION MUST BE DISMISSED AS
AGAINST LCB AND MR. HAMDOUN. ...................................................................... 8

        A.      Plaintiffs Do Not Plausibly Allege That LCB or Hamdoun Committed an
"Act of International Terrorism." ...................................................................... 9

        B.      Plaintiffs Do Not Plausibly Allege That LCB or Hamdoun Proximately
Caused Plaintiffs' Injuries .............................................................................. 11

III.    THE JASTA CONSPIRACY PORTION OF PLAINTIFFS' SECOND CAUSE
OF ACTION MUST BE DISMISSED AS AGAINST LCB AND MR.
HAMDOUN ................................................................................................................ 12

        A.      The Kaplan Plaintiffs are Claim-Precluded From Re-Asserting the
Conspiracy Portion of Their Second Claim Against LCB. ............................... 12

        B.      Plaintiffs Fail to State a Claim for JASTA Conspiracy Against LCB or
Hamdoun, Requiring Dismissal. ..................................................................... 14

IV.    THE AIDING-AND-ABETTING PORTION OF PLAINTIFFS' SECOND
CAUSE OF ACTION MUST BE DISMISSED. ............................................................ 15

        A.      Plaintiffs Do Not Plausibly Allege That the Rocket Attacks Were a
Foreseeable Result of LCB's Alleged Banking Services. ................................. 15

        B.      Plaintiffs' Aiding-and-Abetting Claim Must Be Dismissed as Against
Hamdoun. ...................................................................................................... 17

        C.      If This Court Does Not Stay the Kaplan Case, the Kaplan Plaintiffs'
Aiding-and-Abetting Claim Against LCB Must Be Dismissed .......................... 18

V.     ESTER LELCHOOK'S INDIVIDUAL CLAIMS MUST BE DISMISSED
BECAUSE SHE IS NOT A U.S. NATIONAL. ............................................................. 19

CONCLUSION ................................................................................................................... 20

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7, 8

*Averbach v. Cairo Amman Bank*, 19-cv-00004-GHW, 2020 U.S. Dist. LEXIS 40430 (S.D.N.Y. Mar. 9, 2020) .................................................................................................................. 19

*Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir. 2001) .................................. 17, 18

*Bartlett v. Société Générale De Banque Au Liban Sal*, No. 19-CV-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921 (E.D.N.Y. Nov. 25, 2020) ......................................... 9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 7

*Curtis v. Citibank*, 226 F.3d 133 (2d Cir. 2000) ........................................................ 19

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190 (2d Cir. 2010) ................. 14

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ........................................... 14, 16

*Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021) ...................................... 16

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118 (2d Cir. 2013) ...................................... 11

*Kaplan v. Cent. Bank of Islamic Rep. of Iran*, 896 F.3d 501 (D.C. Cir. 2018) .............................. 4

*Kaplan v. Lebanese Canadian Bank*, SAL, 405 F. Supp. 3d 525 (S.D.N.Y. 2019) .............. *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) .......................... 2, 13, 15

*Lelchook v. Islamic Rep. of Iran*, No. 16-CV-7078 (ILG), 2020 U.S. Dist. LEXIS 221606 (E.D.N.Y. Nov. 23, 2020) .......................................................................................... 19

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ............................................ 9

*Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) ..................................... 8, 9, 10

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94 (2d Cir. 1997) ....................................... 14

*Meyer v. Holley*, 537 U.S. 280 (2003) ....................................................................... 18

*O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709-LTS-GWG, 2019 WL 1409446, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019) ....................................................... 8, 14

*Rosenberg v. Lashkar-e-Taiba*, No. 10 CV 5381 (DLI) (CLP), 2016 U.S. Dist. LEXIS 87724 (E.D.N.Y. July 5, 2016), *adopted in part and modified in part and dismissed by*, 2017 U.S. Dist. LEXIS 52116  (E.D.N.Y. Mar. 31, 2017) ................................................................. 19, 20

*Rosenberg v. Lashkar-e-Taiba*, No. 10-CV-5381 (DLI) (CLP), 2017 U.S. Dist. LEXIS 52116 (E.D.N.Y. Mar. 31, 2017) ................................................................................. 20

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) ................................................................. 11, 12

*Shostack v. Diller*, No. 15 Civ. 2255 (GBD) (JLC), 2016 U.S. Dist. LEXIS 30354 (S.D.N.Y. Mar. 8, 2016)........................................................................................................................ 18

*Shostack v. Diller*, No. 15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777 (S.D.N.Y. Sept. 15, 2015), *adopted in full*, 2016 U.S. Dist. LEXIS 30354 (S.D.N.Y. Mar. 8, 2016) ...... 18

*Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019) ........................................... 14

*Trisvan v. Heyman*, 305 F. Supp. 3d 381 (E.D.N.Y. 2018) .................................................... 11, 17

*United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001) ................................................................. 13

**Statutes**

18 U.S.C. § 2331 ........................................................................................................................ 9

18 U.S.C. § 2333 ................................................................................................... 14, 15, 19, 20

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................... 16

## PRELIMINARY STATEMENT

This action involves substantially the same alleged facts as a related action pending before this Court, *Kaplan v. Lebanese Canadian Bank, SAL*, Case No. 08-cv-7253-GBD (S.D.N.Y.) ("*Kaplan*").[1]  Both in *Kaplan* and here, Plaintiffs allege injuries arising from rocket attacks in Israel perpetrated by Hezbollah during the Second Lebanon War in July and August 2006 (hereinafter the "Rocket Attacks").  In a number of other lawsuits across multiple jurisdictions, Plaintiffs have asserted claims arising from those same Rocket Attacks against, *inter alia*, Hezbollah itself; the governments of Iran and North Korea; the Qatar-based media company Al Jazeera; Iran's largest bank, Bank Saderat; a Swiss financial institution, UBS; and numerous other Lebanese banks.[2]  Nonetheless, both in *Kaplan* and here, Plaintiffs assert that Lebanese Canadian Bank ("LCB") is liable for their injuries under the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA").  This despite the fact that Plaintiffs allege nothing more than that LCB provided routine banking services to two individuals and three private entities, <u>none</u> of which was designated as a terrorist or terrorist organization by the U.S. government before or during the July-August 2006 time-period relevant to this action.

In *Kaplan*, this Court previously ruled that these factual allegations are insufficient to state a valid claim.  The Court issued a Memorandum Decision and Order on September 20, 2019 <u>dismissing all claims against LCB</u> in *Kaplan*, including both Plaintiffs' primary (material-support) liability and secondary (conspiracy and aiding-and-abetting) liability claims.  *Kaplan*, ECF No. 113, published at 405 F. Supp. 3d 525 (S.D.N.Y. 2019) (hereinafter the "*Kaplan* Order").

---

[1]  *Kaplan* was originally captioned *Licci v. American Express Bank Ltd.*  The claims against American Express Bank were dismissed by this Court in a Memorandum Decision and Order dated March 31, 2010.  *See Kaplan*, ECF No. 53.

[2]  *See, e.g.*, *Kumer v. Hezbollah*, No. 18-CV-07449-CBA-RLM (E.D.N.Y.); *Kaplan v. Hezbollah*, 19-cv-03187-BMC-ST (E.D.N.Y.); *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, No. 10-CV-00483-RCL (D.D.C.); *Kumer v. Bank Saderat Iran*, No. 18-CV-07456-ILG-RLM (E.D.N.Y.); *Rothstein v. UBS AG*, No. 08-CV-04414-JSR (S.D.N.Y.); *Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-CV-00033-RJD-SJB (E.D.N.Y.).

Nonetheless, Plaintiffs assert the same claims, based on substantially identical facts, against LCB here. The only significant differences between this action and *Kaplan* are that, of the 27 Plaintiffs in this action, only 18 are also plaintiffs in *Kaplan*; and here, the Plaintiffs also assert claims against two former LCB officials, Mohamed Hamdoun ("Hamdoun") and Ahmad Safa, as well as other unnamed former LCB officers, based solely on Plaintiffs' allegations that these individual Defendants somehow "authorized," "directed," or "carried out" the routine banking services.

In *Kaplan*, Plaintiffs appealed this Court's dismissal of their claims to the Second Circuit. Importantly, however, that appeal related <u>only</u> to the <u>aiding-and-abetting portion</u> of the *Kaplan* Plaintiffs' secondary-liability claim against LCB. Plaintiffs did <u>not</u> appeal this Court's dismissal of their <u>primary-liability</u> claim or the <u>conspiracy portion</u> of their secondary-liability claim. This Court's dismissal of Plaintiffs' primary-liability and conspiracy claims in the *Kaplan* Order remains final. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 845 (2d Cir. 2021) (the "Second Circuit *Kaplan* Decision") (noting that "Plaintiffs hav[e] abandoned their ATA claims and JASTA conspiracy claims" on appeal, and vacating the *Kaplan* Order <u>solely</u> as to Plaintiffs' aiding-and-abetting claim).

Here, Plaintiffs' first cause of action and the JASTA conspiracy portion of Plaintiffs' second cause of action must be dismissed for the same reasons that this Court already has dismissed the look-alike claims in *Kaplan*. More specifically, Plaintiffs' first cause of action, for primary (material-support) liability under the ATA, fails because Plaintiffs do not plausibly allege that LCB's routine banking services for the five alleged customers themselves constituted an "act of international terrorism," as required for an ATA primary-liability claim. Additionally, Plaintiffs do not plausibly allege that LCB's routine banking services were the proximate cause of Plaintiffs' injuries. As to the JASTA conspiracy claim, the *Kaplan* Plaintiffs' claim against LCB is barred

by this Court's dismissal of that claim in the *Kaplan* Order.  And all Plaintiffs fail to plausibly allege an unlawful agreement between LCB and Hizbollah, let alone an agreement to commit an act of international terrorism, as required for a JASTA conspiracy claim.

Plaintiffs' material-support and JASTA conspiracy claims also must be dismissed against Hamdoun.  Just as with LCB, Plaintiffs do not plausibly allege that Hamdoun committed an "act of international terrorism" or proximately caused Plaintiffs' injuries, or that Hamdoun entered into any unlawful agreement with Hizbollah.  Plaintiffs merely allege that Hamdoun authorized or approved <u>LCB's</u> provision of banking services to five customers, none of whom was designated as a terrorist by the U.S. government before or during the relevant period.  Because those alleged banking services themselves are insufficient to state a material-support or JASTA conspiracy claim, Hamdoun's purported authorization or approval of those services is also insufficient to support those claims.  Plaintiffs do not allege more.

The aiding-and-abetting portion of Plaintiffs' second cause of action against LCB and Hamdoun also must be dismissed because the Rocket Attacks were not a reasonably foreseeable result of LCB's alleged banking services, as required for a JASTA aiding-and-abetting claim. Plaintiffs' aiding-and-abetting claim against Hamdoun also fails because Plaintiffs do not plausibly allege that Hamdoun himself participated in or directly oversaw LCB's allegedly wrongful conduct.

LCB has moved to stay *Kaplan* pending resolution of Plaintiffs' claims in this action, in light of the substantial overlap among the parties and claims in the two cases, and for other reasons set forth in LCB's motion papers.  *See Kaplan*, ECF Nos. 134-135, 142.  In their opposition to that motion, the *Kaplan* Plaintiffs have asserted that their aiding-and-abetting claim in <u>this</u> action should be "dismissed without prejudice to plaintiffs' aiding and abetting claim" in *Kaplan*.  *See*

*Kaplan*, ECF No. 141, at 4-6. For the reasons set forth in LCB's motion papers, *Kaplan* should be stayed and Plaintiffs' aiding-and-abetting claim should be litigated here. However, should the Court deny LCB's motion to stay *Kaplan*, the aiding-and-abetting claim of the 18 *Kaplan* plaintiffs against LCB must be dismissed here.

Finally, Plaintiffs' Complaint identifies Ester Lelchook as bringing this action "individually and on behalf of the Estate of David Martin Lelchook." Compl. ¶ 4. Ester Lelchook's individual claims must be dismissed because she is not a U.S. national and therefore does not have standing to sue under the ATA to assert claims for her own injuries.

## STATEMENT OF FACTS

Plaintiffs' factual allegations here are substantially identical to those in *Kaplan*, which this Court dismissed in its entirety in the September 20, 2019 *Kaplan* Order. The 27 Plaintiffs (with the exception of Ester Lelchook) are U.S. citizens who claim that they were injured by Rocket Attacks perpetrated by Hezbollah in Israel in July and August 2006. *See* Compl. ¶¶ 1-2, 4-9, 60.

The Second Lebanon War began on June 12, 2006, when "Hezbollah militants left Lebanon, crossed the Israeli border, and kidnapped and killed several Israeli soldiers." *Kaplan v. Cent. Bank of Islamic Rep. of Iran*, 896 F.3d 501, 505 (D.C. Cir. 2018). "Israel responded by mounting a ground offensive in Lebanon and deploying a bombing campaign against Hezbollah." *Id.* "Hezbollah then initiated a campaign of rocket attacks, firing thousands of unguided rockets into civilian populations in northern Israel, striking cities, towns, and villages. The conflict ended on August 14, 2006, when the United Nations brokered a cease-fire between Hezbollah, Israel, and Lebanon." *Id.*

Plaintiffs allege that David Martin Lelchook was killed in a Rocket Attack on August 2, 2006, causing his death and emotional and financial injuries to his family. Compl. ¶¶ 62-66. Two other Plaintiffs, Chaim Kaplan and Rivka Kaplan, allege that they suffered physical and emotional

injuries caused by a rocket that landed near Chaim Kaplan's car and another that struck their home. *Id.* ¶ 70. Another Plaintiff, Karen Erdstein, claims that Rocket Attacks "near the Erdstein home" caused her stress and anxiety, resulting in a miscarriage. *Id.* ¶ 71. Another, Avishai Reuvane, alleges that a rocket struck his home and knocked him unconscious. *Id.* ¶ 78. The other Plaintiffs allege that they suffered emotional injuries from the Rocket Attacks. *Id.* ¶¶ 67-69, 71-80.

Defendant LCB was a commercial bank organized under the laws of Lebanon and headquartered in Beirut, Lebanon. *Id.* ¶ 10. LCB ceased its banking operations in 2011, and decided to sell its assets and liquidate following allegations against it by the U.S. Treasury Department—none of which relate to the Rocket Attacks. *See* Stipulation and Order of Settlement, *United States of America v. Lebanese Canadian Bank SAL,* No. 11 Civ. 9186-PAE (S.D.N.Y.), ECF No. 462, at 2-3 (filed June 25, 2013).[3] LCB resolved those allegations with no admission of wrongdoing. Further, as part of the settlement, the U.S. government acknowledged that it had asserted no claims against, *inter alia*, LCB's former General Manager, Mohamed Hamdoun, who is also named as a Defendant in this action. *Id.* ¶ 14; *id.* Schedule A.

Plaintiffs allege that Hizbollah "is, and at all relevant times was, a complex, composite organization, which is composed of various subordinate entities which were created, and are entirely controlled, by Hizbollah." Compl. ¶ 29. Plaintiffs allege that one of these "subordinate entities" is the Shahid (Martyrs) Foundation ("Shahid"), and that "Shahid's purpose is to provide financial and other material support to Hizbollah terrorists wounded in action, and to the families of Hizbollah terrorists killed in action." *Id.* ¶¶ 30-31. Plaintiffs allege that two other Hizbollah "subordinate entities" are Bayt al-Mal and the Yousser Company for Finance and Investment

---

[3] The Stipulation and Order of Settlement is also available at https://www.justice.gov/sites/default/files/usao-sdny/legacy/2015/03/25/U.S.%20v.%20Lebanese%20Canadian%20Bank%20Settlement%20Order.pdf (last visited November 26, 2021).

("Yousser"). *Id.* ¶ 32. Plaintiffs do <u>not</u> allege that any of these three entities was designated as a terrorist or terrorist organization by the U.S. government prior to or at the time of the Rocket Attacks.

Plaintiffs do not allege that LCB, Hamdoun, or any other LCB employee is a member of, or affiliated with, Hezbollah. Nor do Plaintiffs allege that LCB, Hamdoun, or any other LCB employee participated in, or had advance knowledge of, any of the Rocket Attacks. *See Kaplan*, 405 F. Supp. 3d at 532 ("There is no dispute that [LCB] did not itself perpetrate the rocket attacks that injured Plaintiffs."). Indeed, Plaintiffs do not identify a single individual, with any connection to LCB or otherwise, who allegedly perpetrated any of the Rocket Attacks.

Instead, Plaintiffs allege that LCB is liable (along with, by extension, Hamdoun and the other individual Defendants) for the Rocket Attacks solely because LCB maintained bank accounts and processed wire transfers for Shahid, Bayt al-Mal, and Yousser. Compl. ¶¶ 46-48. Plaintiffs allege that the Bayt al-Mal accounts were "nominally listed in the names of Bayt al-Mal, as well as "Hezbollah leaders Husayn al-Shami . . . and Wahid Mahmoud Sbeity, . . ." *Compare id.* ¶ 47;[4] *with Kaplan*, 405 F. Supp. 3d at 529 (noting *Kaplan* plaintiffs' identical allegations that LCB maintained accounts for the same Five Alleged Customers). Plaintiffs allege—in conclusory fashion and without factual support—that these accounts, the funds held in them, and the transactions carried out on them, "belonged to Hizbollah and were under the control of Hizbollah." *Compare* Compl. ¶¶ 50-52; *with Kaplan*, 405 F. Supp. 3d at 529 (noting same allegations in *Kaplan*). Plaintiffs also allege that, "between 2004 and July 12, 2006 (and subsequently), Hizbollah made and received" wire transfers through LCB "totaling many millions of dollars." *Compare* Compl. ¶ 54.; *with Kaplan*, 405 F. Supp. 3d at 529 (noting same allegations). As to

---

[4] Shahid, Bayt al-Mal, Yousser, al-Shami, and Sbeity are collectively referred to herein as the "Five Alleged Customers."

Hamdoun, Safa, and the John Does, Plaintiffs do not allege that they engaged in any additional wrongful conduct, only that they somehow, at some unspecified time and in some unspecified manner, "initiated and authorized LCB's banking relationship with Hizbollah," including the aforementioned accounts and wire transfers. Compl. ¶ 58. Plaintiffs allege that Safa and the John Does "opened" and "managed" the accounts "on a day-to-day basis" and "carried out" the wire transfers, pursuant to some unspecified "direction and authorization" from Hamdoun. *Id.* ¶ 59.

Plaintiffs do <u>not</u> allege that LCB, or any of the other Defendants, provided funds directly to Hezbollah. Nor do Plaintiffs allege that any funds processed through any account maintained by the Five Alleged Customers were ultimately provided to Hezbollah and then used to fund any of the Rocket Attacks. Indeed, as this Court already recognized in *Kaplan*, "Plaintiffs' complaint is devoid of any factual, non-conclusory allegations that demonstrate, for example, that Defendant provided money directly to Hizbollah to carry out the attacks; that any funds transferred through the LCB Accounts were, in fact, sent to Hizbollah and then used by Hizbollah to perpetrate the rocket attacks; or that Hizbollah would not have been able to carry out the attacks absent those specific funds." *Kaplan*, 405 F. Supp. 3d at 533.

## ARGUMENT

## I. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted); *Kaplan*, 405 F. Supp. 3d at 531 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "The plaintiff must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully'; stating a facially plausible claim requires the plaintiff to plead facts that enable the court 'to draw the reasonable inference that the defendant

is liable for the misconduct alleged.'" *Kaplan*, 405 F. Supp. 3d at 531 (quoting *Iqbal*, 556 U.S. at 678). "A district court must first review a plaintiff's complaint to identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## II. PLAINTIFFS' FIRST CAUSE OF ACTION MUST BE DISMISSED AS AGAINST LCB AND MR. HAMDOUN.

In its *Kaplan* Order, this Court dismissed the same ATA primary-liability claim asserted against LCB by the 18 *Kaplan* Plaintiffs, all of whom are also Plaintiffs here. For the same reasons, the other nine Plaintiffs' substantially-identical ATA primary-liability claim fails to state a claim for relief against either LCB or Hamdoun, requiring dismissal here.

"To prevail on a claim of primary liability under the ATA, a plaintiff must demonstrate '(1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation.'" *Kaplan*, 405 F. Supp. 3d at 531 (quoting *O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709-LTS-GWG, 2019 WL 1409446, 2019 U.S. Dist. LEXIS 53134, at *23 (S.D.N.Y. Mar. 28, 2019)). The ATA's primary-liability provision "afford[s] civil relief only against the principals perpetrating acts of international terrorism. It provide[s] no civil action against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 319-20 (2d Cir. 2018).

As in *Kaplan*, Plaintiffs' primary-liability claim here is legally and factually deficient for at least two independent reasons, each of which requires dismissal. First, Plaintiffs do not plausibly allege that LCB's banking services, or any action by Hamdoun, themselves constituted an "act of

international terrorism," as required for an ATA primary-liability claim. Second, Plaintiffs do not allege that any purported acts by LCB or Hamdoun proximately caused Plaintiffs' injuries.

### A. Plaintiffs Do Not Plausibly Allege That LCB or Hamdoun Committed an "Act of International Terrorism."

"The ATA defines 'international terrorism' as activities that (1) 'involve violent acts or acts dangerous to human life'; (2) qualify as 'a violation of the criminal laws of the United States or of any State' if committed within the United States; (3) 'appear to be intended' to 'intimidate or coerce a civilian population,' to 'influence the policy of a government by intimidation or coercion,' or to 'affect the conduct of a government by mass destruction, assassination, or kidnapping'; and (4) 'occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries.'" *Kaplan*, 405 F. Supp. 3d at 531-32 (quoting 18 U.S.C. § 2331(1)). To qualify as an "act of international terrorism," a defendant's act must satisfy <u>all four</u> of these requirements. *Id.* at 532 (citing *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018); *see also Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012) ("For an act to constitute international terrorism," it must satisfy all four requirements); *Bartlett v. Société Générale De Banque Au Liban Sal*, No. 19-CV-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921, at *46-47 (E.D.N.Y. Nov. 25, 2020) (same).

This Court correctly held in *Kaplan* that the plaintiffs there, based on substantially identical allegations as here, had "fail[ed] to allege facts from which it can be inferred that [LCB's] conduct constitutes international terrorism." 405 F. Supp. 3d at 532. Here, as in *Kaplan*, "[t]here is no dispute that Defendant[s] did not [themselves] perpetrate the rocket attacks that injured Plaintiffs." *Id.* Plaintiffs allege only that LCB, at the direction of Hamdoun, provided financial services to the Five Customers. But "the provision of financial services does not, in itself, equate to international terrorism." *Id.*; *see Bartlett*, 2020 U.S. Dist. LEXIS 229921, at *48-49 ("As the court concluded

in *Kaplan*, alleging that defendants provided financial services is different than alleging 'Defendant's own actions . . . involved violence or endangered human life'") (quoting *Kaplan*, 405 F. Supp. 3d at 532).   Rather, Plaintiffs must plausibly allege that LCB's or Hamdoun's "*own* actions '*also* involve[d] violence or endanger[ed] human life' and that these actions 'appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government.'" *Kaplan*, 405 F. Supp. 3d at 532 (quoting *Linde*, 882 F.3d at 326) (emphasis and alterations in original).   As in *Kaplan*, "Plaintiffs fail to allege any of that here" and accordingly, "their primary liability claim cannot survive a motion to dismiss."   *Id.*; *see Bartlett*, 2020 U.S. Dist. LEXIS 229921, at *49 ("I agree with the *Kaplan* court's conclusion on the question of primary liability that providing financial services such as those alleged here is not an act which is 'violent or dangerous to human life' as contemplated by the ATA.").

Plaintiffs did not assert a primary-liability claim against Hamdoun in *Kaplan*, but that claim fares no better against Hamdoun than it does against LCB, and must be dismissed for the same reasons.   Plaintiffs allege only that the banking services allegedly provided by LCB—insufficient to state a primary-liability claim against LCB itself—were performed "pursuant to the direction and authorization of Hamdoun," Compl. ¶ 59, and "with the approval and participation of" Hamdoun and the other Individual Defendants, *id.* ¶¶ 104, 106; and that Hamdoun "set the policy" pursuant to which LCB provided those services, *id.* ¶ 12.   Because, as this Court has already held in *Kaplan*, LCB's alleged provision of routine banking services to five customers does not constitute an "act of international terrorism," Plaintiffs' conclusory, non-specific allegations regarding Hamdoun's "approval" of and "participation" in those same routine banking services also are insufficient to allege that Hamdoun committed an "act of international terrorism," because they do not plausibly allege that Hamdoun himself committed such an act <u>or</u> that he participated

in or directly oversaw an "act of international terrorism" committed by LCB. *See, e.g.*, *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 n.24 (E.D.N.Y. 2018) ("It is a well-settled principle of New York law that a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive's company <u>only</u> if the executive <u>participated in or directly oversaw</u> the allegedly tortious conduct.") (citations omitted and emphasis added). Plaintiffs' primary-liability claim thus fails as against both LCB and Hamdoun.

### B. Plaintiffs Do Not Plausibly Allege That LCB or Hamdoun Proximately Caused Plaintiffs' Injuries.

As this Court also correctly held as to the *Kaplan* Plaintiffs' look-alike primary-liability claim, "[e]ven if Defendant's provision of financial services to the Five Customers could constitute international terrorism, Plaintiffs' primary liability claim would still fail because Plaintiffs have not sufficiently alleged that such conduct was the proximate cause of their injuries." *Kaplan*, 405 F. Supp. 3d at 532. "The Second Circuit has held that 'the "by reason of language of the [ATA] restricts the imposition of such liability to situations where plaintiffs plausibly allege that defendants['] actions proximately caused their injuries.'" *Id.* (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013)) (alterations in original). As this Court held in the *Kaplan* Order, "[t]he causal link between [LCB's alleged] provision of financial services and Plaintiffs' injuries is too attenuated to support a finding of proximate cause." *Id.* at 533. As in *Kaplan*, "Plaintiffs' complaint is devoid of any factual, non-conclusory allegations that demonstrate, for example, that Defendant provided money directly to Hizbollah to carry out the attacks; that any funds transferred through the LCB Accounts were, in fact, sent to Hizbollah and then used by Hizbollah to perpetrate the rocket attacks; or that Hizbollah would not have been able to carry out the attacks absent those specific funds." *Id.* (citing *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013)).

As in *Kaplan*, "Plaintiffs allege that Defendant[s] 'intentionally and/or recklessly provided extensive banking services to Hizbollah, which caused . . . the [Rocket Attacks]'"; "that Hizbollah's ability to carry out the attacks 'would have been severely crippled and limited'" but for Defendants' banking services; and that Defendants "provided Hizbollah with extensive banking services with the purpose of facilitating, enabling and causing Hizbollah to carry out acts of violence against Israeli targets". *Compare Kaplan*, 405 F. Supp. 3d at 533 (quoting *Kaplan* Second Amended Complaint, ¶¶ 3, 66, 103); *with* Compl. ¶¶ 3, 85, 122. But as this Court correctly held in the *Kaplan* Order, "'these are conclusory allegations that do not meet *Twombly's* plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by [Defendants] to [the Five Alleged Customers] and the terrorist attacks by Hizbollah . . . that injured [P]laintiffs.'" *Kaplan*, 405 F. Supp. 3d at 533 (quoting *Rothstein*, 708 F.3d at 97) (alterations in original).

In short, this Court has already correctly held that Plaintiffs' allegations in *Kaplan* did not state a valid claim for relief. Plaintiffs' allegations are substantially identical and equally insufficient here. Accordingly, the primary-liability claim against both LCB and Hamdoun must be dismissed for the same reasons that this Court has already dismissed the similar claim in *Kaplan*.

## III. THE JASTA CONSPIRACY PORTION OF PLAINTIFFS' SECOND CAUSE OF ACTION MUST BE DISMISSED AS AGAINST LCB AND MR. HAMDOUN.

### A. The *Kaplan* Plaintiffs Are Claim-Precluded From Re-Asserting the Conspiracy Portion of Their Second Claim Against LCB.

As noted above, 18 of the 27 Plaintiffs here are also plaintiffs in *Kaplan*, in which they asserted the same claims against LCB as here—one cause of action alleging ATA primary liability, and a second cause of action alleging JASTA secondary liability on theories of both conspiracy and aiding-and-abetting. *See Kaplan* Order, 405 F. Supp. 3d at 530-31 (noting that *Kaplan*

plaintiffs' second amended complaint asserted two claims, one for ATA primary liability and one for JASTA secondary liability).

In *Kaplan*, this Court dismissed plaintiffs' claims in their entirety in its September 20, 2019 Memorandum Decision and Order. Plaintiffs appealed that decision, but their appeal was addressed <u>only</u> to the <u>aiding-and-abetting portion</u> of their JASTA claim. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 845 (2d Cir. 2021) ("On appeal, Plaintiffs seek reversal only of the dismissal of their JASTA aiding-and-abetting claims . . . . Plaintiffs having abandoned their ATA claims and JASTA conspiracy claims, we address only their JASTA aiding-and-abetting claims . . . ."). The Second Circuit's mandate confirmed that this Court's *Kaplan* Order was left largely intact, was vacated only "to the extent it dismissed Plaintiffs' JASTA aiding-and-abetting claims," and that the Second Circuit's *Kaplan* Decision remanded to this Court for further proceedings solely "on <u>those</u> claims." Mandate, *Kaplan*, 08-cv-7253, ECF No. 122 (emphasis added); *see Kaplan*, 999 F.3d at 867 ("So much of the judgment of the district court as dismissed Plaintiffs' JASTA aiding-and-abetting claims is vacated, and the matter is remanded for further proceedings on those claims."). "The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court. . . . Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotations and citations omitted, emphasis in original). Accordingly, this Court's *Kaplan* Order remains final with respect to the conspiracy portion of the *Kaplan* Plaintiffs' JASTA claim, and bars the *Kaplan* Plaintiffs from reasserting that claim against LCB here pursuant to the doctrine of *res judicata*. "Under both

New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)) (alterations in original).

### B. Plaintiffs Fail to State a Claim for JASTA Conspiracy Against LCB or Hamdoun, Requiring Dismissal.

As this Court recognized in *Kaplan*, "Congress has instructed that the 'proper legal framework' for assessing civil aiding and abetting and conspiracy liability under JASTA is set forth in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)." *Kaplan*, 405 F. Supp. 3d at 533-34 (citing *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223 (2d Cir. 2019)). "The prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct." *Halberstam*, 705 F.2d at 478.

Under the plain text of JASTA, Defendants can be liable for conspiracy only if they "conspire[d] with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). "Specifically, to assert a claim of conspiracy here, Plaintiffs must allege that Defendant[s] and Hizbollah entered into an agreement to commit an act of international terrorism, and that Plaintiffs were injured by an unlawful overt act performed by Defendant or Hizbollah pursuant to this agreement." *Kaplan*, 405 F. Supp. 3d at 534 (citing *Halberstam*, 705 F.2d at 477). "'[T]o be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism.'" *Id.* (quoting *O'Sullivan*, 2019 WL 1409446, 2019 U.S. Dist. LEXIS 53134, at *35). In the Second Circuit *Kaplan* Decision, the

Court of Appeals reconfirmed that JASTA conspiracy claims require that a defendant "'conspire[d] with' the principal" who "committed" the relevant acts of international terrorism. *Kaplan*, 999 F.3d at 855.

Plaintiffs do not even attempt to allege a plausible JASTA conspiracy claim here as against either LCB or Hamdoun. The entirety of Plaintiffs' conclusory allegations that could even conceivably relate to the elements of a JASTA conspiracy claim are that "Defendants"—alleged as a group—"engaged in an extensive, long-term criminal scheme with Hizbollah, and with each other, pursuant to which they provided Hizbollah with wire transfer and other banking services to support Hizbollah's terrorist activities. Pursuant to and in furtherance of that common plan, Hizbollah fired the rockets that murdered the decedent and harmed the plaintiffs." Compl. ¶ 134. This vague, fact-free assertion cannot be credited even for Rule 12 purposes. At most, Plaintiffs' Complaint alleges that LCB provided banking services to the Five Alleged Customers. But this is not enough—JASTA specifies that the defendant must conspire "with the person who committed" the act of international terrorism. 18 U.S.C. § 2333(d)(2). There is no plausible allegation whatsoever of any agreement at all between either LCB or Hamdoun on the one hand, and Hezbollah on the other hand, let alone an agreement to commit an act of international terrorism, as required for a JASTA conspiracy claim. Accordingly, this claim must be dismissed.

## IV. THE AIDING-AND-ABETTING PORTION OF PLAINTIFFS' SECOND CAUSE OF ACTION MUST BE DISMISSED.

### A. Plaintiffs Do Not Plausibly Allege That the Rocket Attacks Were a Foreseeable Result of LCB's Alleged Banking Services.

The one portion of this Court's *Kaplan* Order that was vacated by the Second Circuit was the dismissal of the *Kaplan* plaintiffs' aiding-and-abetting claim. *See Kaplan*, 999 F.3d 842, 867 ("So much of the judgment of the district court as dismissed Plaintiffs' JASTA aiding-and-abetting claims is vacated, and the matter is remanded for further proceedings on those claims.").

Subsequent to the Second Circuit *Kaplan* Decision, the Court of Appeals further clarified the requirements for a JASTA aiding-and-abetting claim in *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021). In particular, the Second Circuit held that for a JASTA aiding-and-abetting claim, a defendant "must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was *foreseeable*." *Id.* at 496 (citing *Halberstam*, 705 F.2d at 477, 488) (emphasis in original). The Court of Appeals clarified that "[f]oreseeability is . . . central to the *Halberstam* framework, and as a result, to JASTA aiding-and-abetting liability." *Id.* at 496-97. Under *Halberstam*, foreseeability is not "specifically attach[ed] . . . to the general awareness or substantial assistance elements" of a JASTA aiding-and-abetting claim; rather, it is used "broadly" to define "the extent of liability under an aiding-and-abetting theory." *Honickman*, 6 F.4th at 497 n.10. Importantly, the Court of Appeals held that "the act that caused the plaintiff's injury"—here, the Rocket Attacks—must be a foreseeable consequence of the defendant's alleged conduct. *Id.* at 496; *see id.* at 499 ("As the analysis in *Halberstam* reveals, the 'principal violation' must be foreseeable from the illegal activity that the defendant assisted . . . .") (citing *Halberstam*, 705 F.2d at 488).

The Rocket Attacks were allegedly perpetrated by Hezbollah during the Second Lebanon War, following an initial incursion by "Hezbollah militants" into Lebanon and then a "ground offensive in Lebanon" and a "bombing campaign" by Israel. *See Kaplan v. Cent. Bank of Islamic Rep. of Iran*, 896 F.3d at 505. Even assuming, *arguendo* and for Rule 12 purposes, that (1) LCB provided banking services to the Five Alleged Customers, and that (2) those customers were affiliated with Hezbollah, nothing in Plaintiffs' Complaint suggests that <u>a war between Israel and Hezbollah</u>, and <u>Rocket Attacks in Israel perpetrated as a part of that war</u>, could be a foreseeable consequence of those banking services. Because the Complaint does not plausibly allege that the

Second Lebanon War, or the Rocket Attacks carried out in the context of that war, reasonably could be foreseen from the banking services allegedly provided to the Five Alleged Customers, the aiding-and-abetting portion of Plaintiffs' second cause of action must be dismissed as against LCB and Hamdoun.[5]

### B. Plaintiffs' Aiding-and-Abetting Claim Must Be Dismissed as Against Hamdoun.

Plaintiffs do not even attempt to allege that Hamdoun's own acts would suffice to support a JASTA aiding-and-abetting claim. Instead, Plaintiffs allege, in entirely conclusory fashion, that Hamdoun "set the policy approving, initiated, directed, authorized and carried out LCB's actions," and that Hamdoun "initiated and authorized LCB's banking relationship with Hizbollah, including the opening and maintenance of the" accounts for the Five Alleged Customers and the "processing" of the wire transfers for those customers. Compl. ¶¶ 12, 58. This is insufficient to plausibly allege that Hamdoun participated in LCB's provision of banking services to the Five Alleged Customers, even if that provision of banking services were enough to allege a viable claim against LCB (which it is not).

"It is a well-settled principle of New York law that a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive's company only if the executive participated in or directly oversaw the allegedly tortious conduct." *Trisvan*, 305 F. Supp. 3d at 407 n.24 (emphasis added); *see Bano v. Union Carbide Corp.*, 273 F.3d 120, 133

---

[5] LCB and Hamdoun acknowledge that in the Second Circuit *Kaplan* Decision, the Court of Appeals determined that the *Kaplan* plaintiffs' allegations were sufficient to survive a Rule 12 motion as to the JASTA aiding-and-abetting claim against LCB. The Court of Appeals' subsequent clarification in *Honickman* of the foreseeability requirement—not argued by LCB in *Kaplan*, either to this Court or on appeal—nonetheless requires dismissal of the JASTA aiding-and-abetting claim against LCB here. For the reasons stated herein, Plaintiffs also fail to plausibly allege a JASTA aiding-and-abetting claim against Hamdoun, either based on his own conduct or on his former position as General Manager of LCB. Further, LCB and Hamdoun respectfully maintain that plaintiffs, both in *Kaplan* and here, have failed plausibly to allege a JASTA aiding-and-abetting claim against LCB, either as to the "general awareness" prong or the "knowing" and "substantial assistance" prong of such a claim. LCB and Hamdoun therefore reserve all rights with respect to this claim, including with respect to future appeals.

(2d Cir. 2001) ("Under New York law, a corporate officer who <u>commits or participates in a tort</u> . . . may be held individually liable.") (citation and internal quotations omitted). It is "well-established that 'absent special circumstances[,] it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.'" *Shostack v. Diller*, No. 15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777, at \*12-13 (S.D.N.Y. Sept. 15, 2015) (Report & Recommendation) (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)) (alteration in original), *adopted in full*, 2016 U.S. Dist. LEXIS 30354, at \*7-8 (Mar. 8, 2016).

Even apart from Plaintiffs' failure to sufficiently allege a JASTA aiding-and-abetting claim against LCB, Plaintiffs have failed to plausibly allege facts showing that Hamdoun participated in or directly oversaw LCB's alleged wrongful acts. Instead, Plaintiffs provide nothing more than "[c]onclusory allegations that [Hamdoun] exercised control over [LCB] by virtue of [his] title or position with the corporation," rather than "facts alleging that [Hamdoun] had any direct involvement in the actions giving rise to [the] litigation." *Shostack*, 2015 U.S. Dist. LEXIS 123777, at \*11-12. This is insufficient to impute LCB's acts to Hamdoun, even if Plaintiffs had plausibly alleged a JASTA aiding-and-abetting claim against LCB (which they have not), requiring dismissal of Plaintiffs' claim against Hamdoun. The U.S. government's acknowledgement, in settling with LCB, that it had no claims against Hamdoun, *see supra* at 5 & n.3, precludes a plausible amendment of the Complaint that might seek to satisfy these strict standards.

**C.    If This Court Does Not Stay the *Kaplan* Case, the *Kaplan* Plaintiffs' Aiding-and-Abetting Claim Against LCB Must Be Dismissed.**

The *Kaplan* action should be stayed pending resolution of Plaintiffs' claims in this action. *See Kaplan*, ECF Nos. 135, 142. However, if the Court determines <u>not</u> to stay *Kaplan*, then the JASTA aiding-and-abetting claim in <u>this</u> action of the 18 Plaintiffs who also are plaintiffs in

*Kaplan* must be dismissed, as those plaintiffs have acknowledged. *See Kaplan*, ECF No. 141, at 4-6; *see also Curtis v. Citibank*, 226 F.3d 133, 139 (2d Cir. 2000) ("plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.").

## V.     ESTER LELCHOOK'S INDIVIDUAL CLAIMS MUST BE DISMISSED BECAUSE SHE IS NOT A U.S. NATIONAL.

The ATA provides, in relevant part, that "[a]ny national of the United States injured . . . by reason of an act of international terrorism . . . may sue therefor" in a U.S. district court. 18 U.S.C. § 2333(a). As alleged in the Amended Complaint, all of the Plaintiffs are U.S. nationals, with the exception of Ester Lelchook. Ms. Lelchook is a "foreign national," not a U.S. national. *See Lelchook v. Islamic Rep. of Iran*, No. 16-CV-7078 (ILG), 2020 U.S. Dist. LEXIS 221606, at *4, *7 (E.D.N.Y. Nov. 23, 2020) (Report & Recommendation). She purports to assert claims here both "individually and on behalf of the Estate of David Martin Lelchook". Compl. ¶ 4. However, because Ester Lelchook is a non-U.S. national, under the ATA's plain language, she does not have standing to sue for her own injuries. The ATA gives Ms. Lelchook standing <u>only</u> to sue in a representative capacity on behalf of a U.S. national allegedly killed as a result of a Rocket Attack— *i.e.*, as that person's estate, survivor, or heir. *See Lelchook*, 2020 U.S. Dist. LEXIS 221606, at *12, *19 (recommending denial of Ester Lelchook's motion for default judgment on her individual ATA claim because "[t]he ATA does not include language authorizing foreign nationals to bring ATA claims in a U.S. court for their own injuries"); *Averbach v. Cairo Amman Bank*, 19-cv-00004-GHW, 2020 U.S. Dist. LEXIS 40430, at *11 (S.D.N.Y. Mar. 9, 2020) (Mem. Op. & Order) ("Nowhere in the [ATA] does Congress provide remedies for non-nationals claiming damages for personal injuries."); *Rosenberg v. Lashkar-e-Taiba*, No. 10 CV 5381 (DLI) (CLP), 2016 U.S. Dist. LEXIS 87724, at *61-65 (E.D.N.Y. July 5, 2016) (discussing ATA's legislative history and

concluding that "the phrase 'or his or her estate, survivors, or heirs' was included in a revision to the statute to 'make certain the ability of family members to file a lawsuit <u>on behalf of a slain or injured relative</u>'" and that "the statute is clear that only claims brought on behalf of individuals who are United States nationals may proceed under the ATA") (emphasis in original), *adopted in part and modified in part and dismissed by*, 2017 U.S. Dist. LEXIS 52116  (Mar. 31, 2017).

Based on the plain language of 18 U.S.C. § 2333(a), Ester Lelchook cannot sue in her individual capacity, only in her representative capacity on behalf of the Estate of David Martin Lelchook.  Her individual claims must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted.

November 29, 2021

**SQUIRE PATTON BOGGS (US) LLP**

*/s/ Gassan A. Baloul*

| | |
|---|---|
| Mitchell R. Berger (MB-4112) | Gassan A. Baloul (GB-4473) |
| mitchell.berger@squirepb.com | gassan.baloul@squirepb.com |
| 2550 M Street, NW | Joseph S. Alonzo (JA-1378) |
| Washington, DC 20037 | joseph.alonzo@squirepb.com |
| Telephone: (202) 457-6000 | 1211 Avenue of the Americas, 26th Floor |
| Facsimile:  (202) 457-6315 | New York, NY 10036 |
| | Telephone: (212) 872-9800 |
| | Facsimile:  (212) 872-9815 |

*Attorneys for Defendants Lebanese Canadian Bank SAL and Mohamed Hamdoun*