UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
  ESTER LELCHOOK, et al.,              :
                                        :
                    Plaintiffs,    :
                                        :
           - against -           :
                                        :    Civ. Action No. 18-cv-12401 (GBD)
  LEBANESE CANADIAN BANK SAL, et al.,  :
                                        :    Hon. George B. Daniels
                    Defendants.  :
-------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AHMAD SAFA'S MOTION TO DISMISS UNDER RULES 12(b)(2) AND (6)

**NIXON PEABODY LLP**

Daniel A. Schnapp
Eric M. Ferrante
Sarah L. Tufano
55 West 46th Street
New York, NY 10036-4120
Tel.: (212) 940-3000
dschnapp@nixonpeabody.com
eferrante@nixonpeabody.com
tufano@nixonpeabody.com

*Attorneys for Defendant Ahmad Safa*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT ......................................................................................................................5

    POINT I        THE CLAIMS AGAINST SAFA MUST BE DISMISSED
                        FOR LACK OF PERSONAL JURISDICTION ..........................................5

          A. Legal Standard ................................................................................5

          B. Safa Lacks the Necessary Minimum Contacts with
             New York to Support the Exercise of Personal Jurisdiction......................6

    POINT II      PLAINTIFFS FAIL TO STATE A PRIMARY
                        LIABILITY OR JASTA CLAIM AGAINST SAFA...............................10

          A. Legal Standard ..............................................................................10

          B. Plaintiffs' ATA Primary Liability Claim Must Be Dismissed
             as to Safa..........................................................................................11

              i.       Plaintiffs fail to sufficiently allege an act of international
                        Terrorism..............................................................................11

               ii.      Plaintiffs fail to sufficiently allege Safa's alleged actions
                        Proximately caused their alleged damages ....................................13

           C. Plaintiffs' JASTA Conspiracy and Aiding-and-Abetting Claims
              Must Be Dismissed as to Safa..........................................................15

               i.       Plaintiffs fail to sufficiently allege an agreement to commit
                        an act of international terrorism as required for a JASTA
                        conspiracy claim ....................................................................16

               ii.      Plaintiffs fail to sufficiently allege the Rocket Attacks were
                        a foreseeable consequence of the banking services, or that
                        Safa was personally involved in the banking services, as
                        required for a JASTA aiding-and-abetting claim...........................17

    POINT III    ESTER LELCHOOK'S INDIVIDUAL CLAIMS MUST
                        BE DISMISSED .................................................................................19

CONCLUSION.................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Rushaid v. Pictet & Cie,*
    68 N.E.3d 1 (N.Y. 2016) ..................................................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................................10

*Bano v. Union Carbide Corp.,*
    273 F.3d 120 (2d Cir. 2001) .........................................................................................18

*Bartlett v. Société Générale de Banque Au Liban SAL,*
    No. 19-00007, 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020) .................................13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................................10

*Berdeaux v. OneCoin Ltd.,*
    No. 19-4074, 2021 WL 4267693 (S.D.N.Y. Sept. 20, 2021) ....................................9

*Blau v. Allianz Life Ins. Co. of N. Am.,*
    124 F. Supp. 3d 161 (E.D.N.Y. 2015) ..........................................................................6

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC,*
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) ............................................................................5

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,*
    722 F.3d 81 (2d Cir. 2013) .............................................................................................6

*Averbach ex rel. Estate of Averbach v. Cairo Amman Bank,*
    No. 19-00004, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) ...................................19

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) ...............................................................................15, 16

*Honickman v. BLOM Bank SAL,*
    6 F.4th 487 (2d Cir. 2021) ...........................................................................................17

*Jazini ex rel. Jazini v. Nissan Motor Co.,*
    148 F.3d 181 (2d Cir. 1998) ...........................................................................................5

*Jesner v. Arab Bank, PLC,*
    138 S. Ct. 1386 (2018) ..................................................................................................19

*Kaplan v. Cent. Bank of Islamic Rep. of Iran,*
    896 F.3d 501 (D.C. Cir. 2018) ...................................................................17, 18

*Kaplan v. Lebanese Canadian Bank, SAL,*
    405 F. Supp. 3d 525 (S.D.N.Y. 2019) ............................................. *passim*

*Kaplan v. Lebanese Canadian Bank, SAL,*
    999 F.3d 842 (2d Cir. 2021) ...............................................................2, 16, 17

*Kaplan v. Lebanese Canadian Bank SAL,*
    No. 08-7253 .......................................................................................... *passim*

*Lelchook v. Islamic Rep. of Iran,*
    No. 16-7078, 2020 WL 12656283 (E.D.N.Y. Nov. 23, 2020) ...............................20

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    673 F.3d 50 (2d Cir. 2012) ...................................................................1, 5, 6, 7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    732 F.3d 161 (2d Cir. 2013) ...................................................................................6

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    984 N.E.2d 893 (N.Y. 2012) ..................................................................................6

*Linde v Arab Bank, PLC,*
    882 F.3d 314 (2d Cir. 2018) ...........................................................................11, 12

*Miller v. Arab Bank, PLC,*
    372 F. Supp. 3d 33 (E.D.N.Y. 2019) ...................................................................19

*O'Sullivan v. Deutsche Bank AG,*
    No. 17-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)............................16, 17

*O'Sullivan v. Deutsche Bank AG,*
    No. 17-8709, 2020 WL 906153 (S.D.N.Y. Feb. 25, 2020).........................11, 12, 14

*PetEdge, Inc. v. Garg,*
    234 F. Supp. 3d 477 (S.D.N.Y. 2017)..............................................................18, 19

*Ramiro Aviles v. S & P Glob., Inc.,*
    380 F. Supp. 3d 221 (S.D.N.Y. 2019).....................................................................8

*Reich v. Lopez,*
    858 F.3d 55 (2d Cir. 2017).......................................................................................7

*Robinson v. Overseas Mil. Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994).......................................................................................5

*Rothstein v. UBS AG,*
    708 F.3d 82 (2d Cir. 2013) ......................................................................11, 13, 14

*Shostack v. Diller,*
    No. 15-2255, 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015) ..................................18

*Siegel v. HSBC N. Am. Holdings, Inc.,*
    933 F.3d 217 (2d Cir. 2019)...................................................................................15

*Sonera Holding B.V. v. Çukurova Holding A.Ş.,*
    750 F.3d 221 (2d Cir. 2014)......................................................................................7

*Taamneh v. Twitter, Inc.,*
    343 F. Supp. 3d 904 (N.D. Cal. 2018) ...................................................................16

*Teledyne Indus., Inc. v. Eon Corp.,*
    373 F. Supp. 191 (S.D.N.Y. 1974) .........................................................................18

*In re Terrorist Attacks on Sept. 11, 2001 (Burnett v. Al Baraka Inv. & Dev. Corp),*
    349 F. Supp. 2d 765 (S.D.N.Y.)..............................................................................15

*In re Terrorist Attacks on Sept. 11, 2001 (O'Neill v. Asat Trust Reg.),*
    714 F.3d 659 (2d Cir. 2013)....................................................................... *passim*

*Trisvan v. Heyman,*
    305 F. Supp. 3d 381 (E.D.N.Y. 2018) ...................................................................18

*Weiss v. Nat'l Westminster Bank PLC,*
    381 F. Supp. 3d 223 (E.D.N.Y. 2019), *aff'd sub nom. Weiss*, 993 F.3d 144..........13

*Weiss v. Nat'l Westminster Bank, PLC.,*
    993 F.3d 144 (2d Cir. 2021)....................................................................................11

**Statutes**

18 U.S.C. § 2331(1) ......................................................................................11, 12, 15

18 U.S.C. § 2333(a) ...............................................................................................19

18 U.S.C. § 2333(d)(2) ......................................................................................16, 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1

Rule 8(a).................................................................................................................19

Rule 12(b)(2)..............................................................................................................5

## PRELIMINARY STATEMENT

Plaintiffs bring claims under the Antiterrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), against Lebanese Canadian Bank SAL ("LCB") along with Mohamed Hamdoun ("Hamdoun"), Ahmad Safa ("Safa"), and John Does 1 through 5 (collectively, the "Individual Defendants").[1]

As set forth herein, the claims against Safa should be dismissed because this Court lacks personal jurisdiction over Safa as a Lebanese citizen who lacks any meaningful or substantive contact with New York.  Indeed, Plaintiffs' Complaint is devoid of *any* allegations supporting personal jurisdiction over Safa.

To the extent that Plaintiffs seek to have this Court exercise personal jurisdiction over Safa based upon LCB's alleged use of a correspondent account with American Express Bank ("Amex") in New York to carry out various wire transactions, these allegations cannot extend to Safa because he was not involved in those transactions.

In the event that this Court determines it can properly exercise jurisdiction over Safa, Plaintiffs' Complaint still must be dismissed because Plaintiffs have failed to state a claim against him.  Indeed, substantively identical claims against other defendants similarly situated to Safa were already dismissed in the related case of *Kaplan v. Lebanese Canadian Bank SAL*, No. 08-7253.[2]  The plaintiffs in *Kaplan*, eighteen of whom are Plaintiffs in this action, brought ATA primary liability and JASTA conspiracy and aiding-and-abetting claims against LCB.  This Court granted dismissal of the ATA primary liability and JASTA conspiracy claims.  *See Kaplan*

---

[1]  Defendants LCB and Hamdoun have moved to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6).

[2]  This action was originally captioned *Licci v. American Express Bank Ltd*.  This Court dismissed the claims against Amex.  *See Licci*, 704 F. Supp. 2d 403 (S.D.N.Y. 2010).

*v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019).  The plaintiffs

subsequently abandoned those claims on appeal.  *Kaplan v. Lebanese Canadian Bank, SAL*, 999

F.3d 842, 845 (2d Cir. 2021).

 In this action, Plaintiffs seek to assert identical claims against LCB and the Individual

Defendants.  The primary liability and JASTA conspiracy claims must be dismissed as to Safa

for the same reasons that these claims were dismissed against LCB in *Kaplan*.  Specifically,

Plaintiffs have failed to sufficiently allege that Safa, in his capacity as Assistant General

Manager for Branches and Operations at LCB, committed an act of international terrorism or that

his conduct was a proximate cause of Plaintiffs' alleged injuries, as required to state a primary

liability claim under the ATA.  Plaintiffs similarly fail to show that Safa entered into an

agreement to commit an act of international terrorism as required for a JASTA conspiracy claim.

 Additionally, the aiding-and-abetting claim must be dismissed as to Safa.  Since *Kaplan*,

the Second Circuit has clarified the standard for JASTA aiding-and-abetting liability.  Under this

standard, Plaintiffs' allegations fail to sufficiently show that the terrorist attacks in which

Plaintiffs allegedly were injured were a foreseeable consequence of the banking services

Defendants provided.  Furthermore, Plaintiffs have an added burden of showing Safa's personal

involvement as a bank executive in the banking services that allegedly enabled the attacks, a

burden they have not met here.

 For these reasons, Safa respectfully requests this Court grant his motion to dismiss the

Complaint against him in its entirety.

# BACKGROUND[3]

With the exception of Ester Lelchook, Plaintiffs in this action are U.S. citizens allegedly injured in rocket attacks perpetrated by Hizbollah in northern Israel during the Second Lebanon War in the summer of 2006 (the "Rocket Attacks").  (Compl. ¶¶ 1-2, 4-9, 60-80.)[4]

Defendant Ahmad Safa was the Assistant General Manager for Branches and Operations at LCB in Beirut, Lebanon.  (*Id*. ¶ 13; Declaration of Ahmad Safa, dated February 11, 2022 (the "Safa Decl.") ¶ 8.)  As part of his role as Assistant General Manager, Safa oversaw all LCB branches.  (Compl. ¶ 13; Safa Decl. ¶ 9.)  In 2010, Safa left LCB to join the Banking Control Commission, a branch of the Central Bank of Lebanon responsible for supervising and auditing banks and other financial institutions.  (Safa Decl. ¶ 17.)  Safa remained at the Central Bank of Lebanon until his retirement in 2020.  (*Id*. ¶¶ 18-19.)

Plaintiffs allege that while at LCB, Safa, along with the other Individual Defendants, "initiated and authorized LCB's banking relationship with Hizbollah," including opening and maintaining bank accounts associated with five customers who Plaintiffs allege had ties to Hizbollah (the "Five Customers"), and processing wire transfers for those accounts (the "Wire Transfers").  (Compl. ¶¶ 58-59.)  Plaintiffs allege that these wire transfers and "other banking services" Defendants provided to the Five Customers enabled Hizbollah to plan, prepare for, and

---

[3] For a full recitation of the facts of this matter, including the historical context of the Second Lebanon War and the proceedings in *Kaplan*, Defendant Safa respectfully refers the Court to the Memorandum of Law in Support of Motion to Dismiss filed by Defendants LCB and Hamdoun (Dkt. No. 41).

[4] Information cited to the Complaint is drawn from Plaintiffs' allegations in the Complaint and any reference herein does not constitute an admission of truth by Safa.  Safa denies any and all allegations of wrongdoing and reserves all rights concerning admitting or denying specific allegations in the Complaint if or when such responses are required.  Thus, whenever a factual statement is made herein that is attributed to the Complaint, it should be presumed to be a statement "as alleged in the Complaint."

carry out the Rocket Attacks.  (*Id*. ¶¶ 84-85.)  The Wire Transfers were allegedly processed through LCB's correspondent bank, Amex, in New York.  (*Id*. ¶¶ 56-57.)  Plaintiffs also allege that Safa granted certain customers' exceptions from submitting cash transaction slips for transactions exceeding a certain amount.  (*Id*. ¶ 101.)

Plaintiffs do not allege that Safa is a member of or affiliated with Hizbollah, that he ever provided funds directly to Hizbollah, or even that the funds processed in the Wire Transfers were ultimately provided to Hizbollah and used to fund the Rocket Attacks.  Nor do they allege that he participated in or had advanced knowledge of the Rocket Attacks.  Plaintiffs do not allege that Safa engaged in any wrongful conduct other than generally alleging his involvement in processing the Wire Transfers and providing other, unspecified banking services to the Five Customers.

Instead, Plaintiffs allege, in a purely conclusory fashion, that the funds transferred in the Wire Transfers belonged to or were under the control of Hizbollah, that Hizbollah made and received the Wire Transfers, and that the Wire Transfers and other unspecified banking services enabled Hizbollah to carry out the Rocket Attacks.  (*See*, *e.g*., *id*. ¶¶ 50-51, 54, 82, 86-89.)  This Court noted these deficiencies when faced with substantially identical allegations in *Kaplan*:

> Plaintiffs' complaint is devoid of any factual, non-conclusory allegations that demonstrate, for example, that Defendant provided money directly to Hizbollah to carry out the attacks; that any funds transferred through the LCB Accounts were, in fact, sent to Hizbollah and then used by Hizbollah to perpetrate the rocket attacks; or that Hizbollah would not have been able to carry out the attacks absent those specific funds.

405 F. Supp. 3d at 533.

Safa lives in Beirut, Lebanon. (Safa Decl. ¶ 3.)  He does not live, work, or own property in New York (or anywhere else in the United States).  (*Id*. ¶ 4.)  He does not conduct business in New York.  (*Id*. ¶ 6.)  He has no bank accounts in New York.  (*Id*. ¶ 5.)  He has not visited the

United States in over a decade.  (*Id.* ¶ 7.)  In his capacity as Assistant General Manager for

Branches and Operations at LCB, Safa had no contact or involvement with Amex or any of

LCB's correspondent banks.  (*Id.* ¶¶ 11-13.)  He did not initiate LCB's relationship with Amex,

nor did he ever communicate or otherwise interact with Amex.  (*Id.* ¶ 14.)  The Correspondent

Banking Unit within the Treasury Department at LCB was responsible for managing LCB's

relationships with correspondent banks.  (*Id.* ¶ 12.)  Safa did not work for or oversee the

Treasury Department.  (*Id.* ¶ 13.)  Safa was not personally or directly involved in approving,

initiating, or otherwise processing LCB's wire transfers, including the alleged Wire Transfers to

Amex.  (*Id.* ¶ 15.)  He did not travel to New York on behalf of LCB.  (*Id.* ¶ 16.)

**ARGUMENT**

**POINT I**

**THE CLAIMS AGAINST SAFA MUST BE DISMISSED
FOR LACK OF PERSONAL JURISDICTION**

**A.  Legal Standard**

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the

burden is on the plaintiff to make a *prima facie* showing that personal jurisdiction over the

defendant exists.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir.

2012); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y.

2014).  In assessing personal jurisdiction under Rule 12(b)(2), the court is not required to "draw

'argumentative inferences' in the plaintiff's favor."  *Robinson v. Overseas Mil. Sales Corp.*, 21

F.3d 502, 507 (2d Cir. 1994) (citation omitted).  Nor must the court "accept as true a legal

conclusion couched as a factual allegation."  *Jazini ex rel. Jazini v. Nissan Motor Co.*, 148 F.3d

181, 185 (2d Cir. 1998) (citation omitted).

Furthermore, "[i]n deciding a motion to dismiss for lack of personal jurisdiction, the court may consider factual issues beyond the pleadings." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 168 n.3 (E.D.N.Y. 2015). A court may consider materials outside the pleadings "without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

### B.  Safa Lacks the Necessary Minimum Contacts with New York to Support the Exercise of Personal Jurisdiction.

Plaintiffs aver no jurisdictional facts in the Complaint regarding any of the Defendants. Plaintiffs appear to rely on the Second Circuit's finding of personal jurisdiction over LCB in *Licci*, following certification of the question to the New York Court of Appeals. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 174 (2d Cir. 2013). In *Licci*, the New York Court of Appeals articulated the test for personal jurisdiction under New York Civil Practice Law and Rules ("CPLR") 302(a)(1) over a foreign bank who utilized a correspondent bank account in New York as whether the foreign bank's maintenance or use of the correspondent account was purposeful, as opposed to coincidental or adventitious. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 984 N.E.2d 893, 899-900 (N.Y. 2012). The court held that LCB's alleged "repeated" use of its correspondent account with Amex to complete the Wire Transfers on behalf of the alleged Hizbollah-affiliated entities, enabling Hizbollah to carry out the Rocket Attacks, showed purposeful availment such that LCB's use of the account constituted "transacting business" in New York. *Id*. at 901.

*Licci* did not, however, consider whether such exercise would extend to a bank official such as Safa. "[I]t is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can

exercise jurisdiction over the corporation." *In re Terrorist Attacks on Sept. 11, 2001 (O'Neill v. Asat Trust Reg.)*, 714 F.3d 659, 681 (2d Cir. 2013) (citations omitted). Plaintiffs have alleged no facts nor offered any explanation as to how personal jurisdiction exists over Safa in this case.

There is no dispute that this Court lacks general jurisdiction over Safa.[5] Instead, Plaintiffs ostensibly would have this Court exercise specific jurisdiction over Safa based on Plaintiffs' conclusory allegations regarding the Wire Transfers through LCB's correspondent bank account with Amex in New York. However, none of the Complaint's allegations regarding LCB's relationship with Amex include Safa or otherwise explain how he was involved with the correspondent account.

Plaintiffs allege only that LCB entered into a business relationship with Amex in New York (Compl. ¶ 44), that Amex served as LCB's correspondent bank for its U.S. dollar transactions from at least 2004 to 2006 (*id*. ¶¶ 44-45), that LCB began the Wire Transfers via Amex in 2004 (*id*. ¶¶ 53-55), and that Amex served as LCB's correspondent bank for the Wire Transfers (*id*. ¶¶ 56-57). There is no allegation that Safa had any specific contact with or connection to Amex. Although Plaintiffs allege in a vague and conclusory fashion that Safa "initiated and authorized LCB's relationship with Hizbollah," including opening and maintaining the accounts for the Five Customers and "processing" the Wire Transfers (*id*. ¶¶ 58-59, 84-85,

---

[5] To assert general personal jurisdiction over a defendant, the exercise must be authorized by state law and "comport with constitutional due process principles." *Licci*, 673 F.3d at 59-60. "General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich v. Lopez*, 858 F.3d 55, 62-63 (2d Cir. 2017) (quoting *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014)). There can be no dispute that Safa is not domiciled in New York. He lives in Beirut. (Safa Decl. ¶ 3.) He does not live in New York, nor does he own property in New York. (*Id*. ¶ 4.) Plaintiffs do not allege otherwise. Therefore, Safa is not subject to general personal jurisdiction in New York.

104, 106, 112-115), they offer no details showing Safa's direct involvement with Amex in New York or anything else to suggest purposeful availment of New York law.

Although a bank executive or officer is not automatically subject to personal jurisdiction simply because personal jurisdiction exists over the bank, *In re Terrorist Attacks*, 714 F.3d at 681, "if a corporation has sufficient in-state contacts to fall subject to personal jurisdiction, then a corporate officer who has played a part in the [corporate] activities that gave rise to the action is likewise subject to jurisdiction, to the extent that due process permits, due to the agency relationship between the corporation and the officer." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (quotations and citations omitted). However, courts in New York have exercised personal jurisdiction over bank executives or officials based on a correspondent account only where the defendant controlled or was otherwise directly involved in the transactions. *See Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 8 (N.Y. 2016) (asserting personal jurisdiction over banker where banker orchestrated money laundering scheme by using correspondent bank in New York to wire bribes and was directly involved in processing the transactions); *Ramiro Aviles*, 380 F. Supp. 3d at 261 (asserting personal jurisdiction over fund's founder, CEO, and sole voting shareholder where the plaintiff alleged that the founder directed and controlled the fund in engaging in its New York activities and was "intimately involved in [the fund's] day-to-day operations," and that the New York banks formed "a critical conduit" for his activities).

Here, there is no similar allegation that Safa exercised control over establishing LCB's relationship with Amex, or had any other purposeful contact with New York. *Ramiro Aviles*, 380 F. Supp. 3d at 261 (citations omitted). Indeed, Plaintiffs cannot allege these minimum contacts exist because Safa had no involvement with nor authority over LCB's correspondent

relationship with Amex during his tenure at LCB, nor was he directly involved in processing the alleged Wire Transfers.  (Safa Decl. ¶¶ 11-15.)  *Cf. Berdeaux v. OneCoin Ltd.*, No. 19-4074, 2021 WL 4267693, at *12 (S.D.N.Y. Sept. 20, 2021) ("Here, Plaintiffs have not alleged that Scott directed the use of a New York correspondent account, nor that the transfer of funds through the New York correspondent account was otherwise purposeful. Instead, Plaintiffs allege only that Scott was aware that a New York account would be used. That is patently insufficient under New York law to constitute the transaction of business . . . . Absent allegations that Scott 'directed the funds to be deposited or controlled the route of the plaintiffs' funds through the correspondent account,' the mere use of a correspondent account does not subject Scott to jurisdiction under Section 302(a)(1).").  Thus, Safa must be dismissed from this suit for lack of personal jurisdiction.

Plaintiffs frequently rely on improper group pleading in which they refer to actions taken by "the Defendants" or the "Individual Defendants," without distinguishing which Defendants were responsible for which specific actions.  (*See*, *e.g.*, Compl. ¶¶ 84-85 (referring to the Wire Transfers "carried out by LCB and the other defendants" and "other banking services provided by defendants"); *id*. ¶¶ 88-89 (referring to the "conduct of defendants" in allegedly facilitating the Wire Transfers and enabling the Rocket Attacks); *id*. ¶¶ 104, 106 (referring to LCB's actions "with the approval and participation of the Individual Defendants"); *id*. ¶¶ 112-115 (referring to "official LCB policy and practice, authorized and implemented by the Individual Defendants").)  Such group pleading is not permitted for establishing personal jurisdiction over a defendant.  *See Berdeaux v. OneCoin Ltd.*, No. 19-4074, 2021 WL 4267693, at *7 (S.D.N.Y. Sept. 20, 2021) ("Plaintiffs' complaint is riddled with instances of improper group pleading, in which they refer to actions taken by 'the Scott Group Defendants,' without distinguishing in the least among the

four Defendants whom Plaintiffs' [sic] have lashed together in their complaint. Similarly, Plaintiffs often attempt to extend an allegation levied against one particular Defendant to the remaining Defendants in the group, seemingly without any basis for doing so, absent speculative and conclusory allegations.  This tactic is plainly impermissible to satisfy Plaintiffs' burden to establish a prima facie case of personal jurisdiction against *each* Defendant as to *each* claim asserted.") (citations omitted) (emphasis in original).  As such, this Court cannot exercise personal jurisdiction over Safa where the allegations fail to distinguish among the different Defendants, "leaving the Court no basis to discern who did what."  *Id.*

## POINT II

### PLAINTIFFS FAIL TO STATE A PRIMARY LIABILITY OR JASTA CLAIM AGAINST SAFA

**A.  Legal Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Kaplan*, 405 F. Supp. 3d at 531.  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Kaplan*, 405 F. Supp. 3d at 531 (citation omitted).  Rather, a plaintiff must plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Therefore, the factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).  The court must first identify conclusory allegations that "are not entitled to the assumption of truth," before considering whether the plaintiff s remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**B.  Plaintiffs' ATA Primary Liability Claim Must Be Dismissed as to Safa.**

To prevail on a primary liability claim under the ATA, Plaintiffs must show: (1) an injury to a U.S. national; (2) an "act of international terrorism"; and (3) causation.  *Kaplan*, 405 F. Supp. 3d at 531 (quoting *O'Sullivan v. Deutsche Bank AG*, No. 17-8709, 2020 WL 906153, at *4 (S.D.N.Y. Feb. 25, 2020)).  A plaintiff can only assert a primary liability claim against a principal perpetrating an act of international terrorism.  *Linde v Arab Bank, PLC*, 882 F.3d 314, 319 (2d Cir. 2018).  A primary liability claim affords no relief "against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others."  *Id*. at 319-20 (citations omitted).  *See also Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (holding the ATA's "statutory silence on the subject of secondary liability means there is none") (citation omitted).  Plaintiffs' primary liability claim against Safa must be dismissed because Plaintiffs have failed to demonstrate that Safa's alleged actions or involvement with the Five Customers at LCB constituted an "act of international terrorism" and that his alleged conduct proximately caused their injuries.

*i.      Plaintiffs fail to sufficiently allege an act of international terrorism.*

The ATA defines "international terrorism" as: (1) dangerous or violent acts that (2) would qualify as a federal or state crime if committed within the United States, (3) appear to be intended to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping," and (4) occur primarily outside the United States or transcend national boundaries.  18 U.S.C. § 2331(1); *Kaplan*, 405 F. Supp. 3d at 531-32.  All four of these elements must be satisfied for an act to qualify as international terrorism.  *Weiss v. Nat'l*

*Westminster Bank, PLC.*, 993 F.3d 144, 156 (2d Cir. 2021); *Linde*, 882 F.3d at 326; *Kaplan*, 405 F. Supp. 3d at 532 (citations omitted).

To state a primary liability claim, Plaintiffs must sufficiently allege that Safa's "*own actions*" involved violence or endangered human life, and appeared intended to intimidate or coerce civilians or influence a government. *Kaplan*, 405 F. Supp. 3d at 532 (quoting *Linde*, 882 F.3d at 326) (emphasis in original). There is no dispute that Safa himself did not perpetrate the Rocket Attacks. Plaintiffs allege only that Safa, along with the other Individual Defendants, "initiated and authorized" LCB's banking relationship with the Five Customers, including opening and maintaining the accounts, processing the Wire Transfers, granting certain customers' exceptions from submitting cash transaction slips for transactions exceeding a certain amount, and approving or participating in providing other, unspecified banking services. (Compl. ¶¶ 58, 59, 101.)

The Second Circuit has made it clear that while "[t]he provision of material support to a designated terrorist organization" can satisfy some of the elements of the statutory definition of Section 2331(1), it "does not invariably equate to an act of international terrorism." *Linde*, 882 F.3d at 326. "[T]o qualify as international terrorism, a defendant's act must *also* involve violence or endanger human life." *Id.* (emphasis in original); *O'Sullivan*, 2020 WL 906153, at *4 (quoting *Linde*, 882 F.3d at 326). This Court has already concluded in *Kaplan* that Defendant LCB's alleged provision of routine banking services to the Five Customers did not constitute an act of international terrorism within the meaning of the ATA on substantially identical allegations. *See 405* F. Supp. 3d at 532 ("Defendant's alleged misconduct was providing wire transfer and other financial services to the Five Customers . . . . However, . . . the provision of financial services does not, in itself, equate to international terrorism."). If Plaintiffs' allegations

regarding LCB's actions were insufficient to state a primary liability claim against LCB, then their generalized allegations regarding Safa's involvement in the banking services LCB allegedly provided is similarly insufficient to support primary ATA liability as to Safa. *Id. See also Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19-00007, 2020 WL 7089448, at \*8 (E.D.N.Y. Nov. 25, 2020) (dismissing primary liability claim because "providing financial services such as those alleged here is not an act which is 'violent or dangerous to human life' as contemplated by the ATA"); *cf. Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 235 (E.D.N.Y. 2019), *aff'd sub nom. Weiss*, 993 F.3d 144 (granting summary judgment on primary liability claim because "Plaintiffs offer no evidence that Defendant's banking services directly involved strong physical force, or intense force, or vehement or passionate threats . . . . [or that] Defendant's banking services directly involved peril or hazard or were likely to cause serious bodily harm"). Because Plaintiffs fail to allege that Safa's own actions constituted an act of international terrorism, their primarily liability claim against Safa must be dismissed.

**ii.    *Plaintiffs fail to sufficiently allege Safa's alleged actions proximately caused their alleged damages.***

To state a primary liability claim under the ATA, Plaintiffs must also plausibly allege that Safa's conduct proximately caused their injuries. *Rothstein*, 708 F.3d at 95. Here, Plaintiffs allege only that the Wire Transfers and other unspecified banking services LCB and the Individual Defendants allegedly provided to the Five Customers allowed Hizbollah to plan, prepare for, and carry out the Rocket Attacks. (Compl. ¶¶ 84-90.) In *Kaplan*, this Court rejected substantially identical allegations as showing proximate cause on LCB's part, holding the causal link between LCB's alleged provision of services and the plaintiffs' injuries was too attenuated. 405 F. Supp. 3d at 533. *See also In re Terrorist Attacks*, 714 F.3d at 124 ("We also are not persuaded that providing routine banking services to organizations and individuals said to be

affiliated with al Qaeda—as alleged by plaintiffs—proximately caused the September 11, 2001

attacks or plaintiffs' injuries.").

Here, as in *Kaplan*, what the Complaint alleges is less significant than what it does *not*

allege.  It does *not* allege that Safa provided funds directly to Hizbollah to carry out the Rocket

Attacks, that any funds allegedly transferred by Safa on behalf of the Five Customers were

actually sent to and used by Hizbollah in the Rocket Attacks, or that Hizbollah would not have

been able to carry out the attacks without Safa's alleged involvement in those transactions.  The

lack of these allegations dooms Plaintiffs' attempt to establish a causal link between Safa's

alleged actions and the Rocket Attacks.  *See Kaplan*, 405 F. Supp. 3d at 533 (citing *Rothstein*,

708 F.3d at 97).  *See also In re Terrorist Attacks*, 714 F.3d at 124 (finding plaintiffs failed to

establish proximate cause where they "do not allege that the Rule 12(b)(6) defendants

participated in the September 11, 2001 attacks or that they provided money directly to al Qaeda;

nor are there factual allegations that the money allegedly donated by the Rule 12(b)(6)

defendants to the purported charities actually was transferred to al Qaeda and aided in the

September 11, 2001 attacks"); *O'Sullivan*, 2020 WL 906153, at *5 ("The [amended complaint]

does not allege that Defendants participated in the attacks themselves, nor does it allege

plausibly that Defendants provided money or goods directly to any foreign terrorist organization

or direct perpetrator of a relevant attack. . . . [nor] that the funds processed by Defendants for

various Iranian banks, airlines, shipping and oil companies were in fact transferred to the terrorist

groups that perpetrated the attacks, or that Iran and its Agents and Proxies would have been

unable to assist the terrorist groups in carrying out the attacks without Defendants' assistance.").

Instead, Plaintiffs offer only conclusory allegations in an unsuccessful attempt to link

Safa's and the other Defendants' actions to the Rocket Attacks.  (*See, e.g.,* Compl. ¶¶ 3, 84-90,

125.)  These allegations are plainly insufficient to establish proximate causation on Safa's part. *Kaplan*, 405 F. Supp. 3d at 533 (citations omitted); *In re Terrorist Attacks*, 714 F.3d at 124-25. Thus, even if Plaintiffs had alleged Safa's actions met the four requirements for "international terrorism" under Section 2331(1) (they have not), their primary liability claim would still fail because they have not shown that Safa's alleged actions proximately caused their injuries.

### C.  Plaintiff's JASTA Conspiracy and Aiding-and-Abetting Claims Must Be Dismissed as to Safa.

Federal courts analyze JASTA conspiracy and aiding-and-abetting claims under the legal framework articulated in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).  *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 223 (2d Cir. 2019) (citations omitted).  Under *Halberstam*, the elements of conspiracy consist of: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme."  *In re Terrorist Attacks on Sept. 11, 2001 (Burnett v. Al Baraka Inv. & Dev. Corp)*, 349 F. Supp. 2d 765, 798 n.28 (S.D.N.Y.), *on reconsideration in part*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005) (quoting *Halberstam*, 705 F.2d at 477) (quotation marks omitted).  An aiding-and-abetting claim requires: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."  *Siegel*, 933 F.3d at 223 (quoting *Halberstam*, 705 F.2d at 477) (quotation marks omitted).

Plaintiffs fail to state a JASTA conspiracy claim against Safa because they do not allege that Safa entered into an agreement with Hizbollah to commit an act of international terrorism

pursuant to which they were injured.  Plaintiffs' JASTA aiding-and-abetting claim similarly fails

because Plaintiffs have not shown that the Rocket Attacks were a foreseeable consequence of the

banking services, or that Safa was directly involved in the alleged unlawful activities leading to

the Rocket Attacks.  Therefore, these claims must be dismissed as to Safa.

> ### i.  Plaintiffs fail to sufficiently allege an agreement to commit an act of international terrorism as required for a JASTA conspiracy claim.

A conspiracy claim under JASTA requires the defendant to "conspire[ ]with the person

who committed such an act of international terrorism."  18 U.S.C. § 2333(d)(2); *see also Kaplan*,

999 F.3d at 854-55.  To state a JASTA conspiracy claim, Plaintiffs must allege that Safa "entered

into an agreement [with Hizbollah] to commit an act of international terrorism," and that

Plaintiffs were injured by an overt act pursuant to that agreement.  *Kaplan*, 405 F. Supp. 3d at

534 (citing *Halberstam*, 705 F.2d at 477); *O'Sullivan v. Deutsche Bank AG*, No. 17-8709, 2019

WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019) (quoting *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d

904, 916 (N.D. Cal. 2018)) ("The plain language of JASTA . . . suggests that JASTA liability lies

where the secondary tortfeasor [conspired with] the principal tortfeasor in committing *such an

act* of international terrorism.") (quotation marks omitted) (emphasis in original).

The Complaint is devoid of any allegation that Safa entered into such an agreement with

Hizbollah.  Although Plaintiffs conclusorily allege that the Defendants as a group "engaged in an

extensive, long-term criminal scheme with Hizbollah," in which they provided banking services

and pursuant to which Hizbollah carried out the Rocket Attacks (Compl. ¶ 134), these allegations

are insufficient to infer that Safa "shared any common goal of committing an act of international

terrorism."  *Kaplan*, 405 F. Supp. 3d at 534.  At most, Plaintiffs' allegations show Safa

"provided financial services to the Five Customers," without showing that Safa "knew of the

planned rocket attacks, or that the Five Customers were affiliated with Hizbollah."  *Id.*  Without

these necessary allegations showing an agreement to commit international terrorism, Safa's

alleged provision of financial services is too far removed from the acts that allegedly injured

Plaintiffs to support a JASTA conspiracy claim.  *Id*. (quoting *O'Sullivan*, 2019 WL 1409446, at

*9).

> ii.     **Plaintiffs fail to sufficiently allege the Rocket Attacks were a foreseeable**
>         **consequence of the banking services, or that Safa was personally involved in**
>         **the banking services, as required for a JASTA aiding-and-abetting claim.**

An aiding-and-abetting claim under JASTA requires the defendant to "aid[] and abet[],

by knowingly providing substantial assistance . . . [to] the person who committed such an act of

international terrorism."  18 U.S.C. § 2333(d)(2); *see also Honickman v. BLOM Bank SAL*, 6

F.4th 487, 494 (2d Cir. 2021) (citations omitted).  Following its holding that the plaintiffs stated

a JASTA aiding-and-abetting claim against LCB in *Kaplan*, 999 F.3d at 866-67, the Second

Circuit clarified the JASTA aiding-and-abetting standard in *Honickman*.  Plaintiffs must allege:

(1) that Safa was aware of the Five Customers' connections with Hizbollah before the Rocket

Attacks; and (2) the Five Customers were sufficiently intertwined with Hizbollah's violent

terrorist activities to infer that Safa was generally aware of his role in the unlawful activities

from which the Rocket Attacks were foreseeable while he was providing financial services to the

Five Customers.  6 F.4th at 501 (citations omitted).  The Second Circuit further clarified that

foreseeability is not attached to a particular prong of the standard, but rather is a broad overlay to

the aiding-and-abetting inquiry.  *Id*. at 497 n.10 (citations omitted).

Plaintiffs have offered no allegation from which to infer that the Rocket Attacks were

foreseeable to Safa at the time the alleged banking services were rendered.  The Rocket Attacks

occurred as part of a war between Israel and Lebanon, beginning with Hizbollah militants

crossing from Lebanon into Israel and kidnapping and killing several Israeli soldiers.  *Kaplan v.*

*Cent. Bank of Islamic Rep. of Iran*, 896 F.3d 501, 505 (D.C. Cir. 2018).  Israel responded with a "bombing campaign" against Hizbollah in Lebanon, and Hizbollah countered with the Rocket Attacks.  *Id*.  Plaintiffs have not alleged how the Rocket Attacks, perpetrated in response to Israel's ground offensive and bombing campaign in Lebanon, were a foreseeable consequence of Safa's alleged provision of banking services to the Five Customers.

Furthermore, even if the Rocket Attacks were somehow foreseeable to Safa, Plaintiffs fail to allege that Safa was directly involved in the banking services such that he even had a role in the allegedly unlawful activities from which the Rocket Attacks allegedly occurred.  "Under New York law, an individual is not personally liable for a corporation's tortious acts merely because he serves as the CEO or other officer of that corporation."  *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 500 (S.D.N.Y. 2017); *see also Shostack v. Diller*, No. 15-2255, 2015 WL 5535808, at *5 (S.D.N.Y. Sept. 16, 2015) (quoting *Teledyne Indus., Inc. v. Eon Corp.*, 373 F. Supp. 191, 196 (S.D.N.Y. 1974)) (holding that an executive or officer is not liable for the tortious acts of a corporation "merely by virtue of his office.").  Rather, the officer "must direct, authorize, or in some meaningful sense participate actively in the assertedly wrongful conduct." *Shostack*, 2015 WL 5535808, at *5 (quoting *Teledyne*, 373 F. Supp. at 196); *see also Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 n.24 (E.D.N.Y. 2018) (citing *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001)) (further citations omitted) ("It is a well-settled principle of New York law that a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive's company only if the executive participated in or directly oversaw the allegedly tortious conduct.").

Plaintiffs offer no allegation showing that Safa directed, authorized, or in any other meaningful sense actively participated in the alleged banking services.  Plaintiffs merely allege

conclusorily (while frequently resorting to group pleading) that Safa "organized, directed and carried out on a day-to-day basis LCB's actions" (Compl. ¶ 13), "initiated and authorized LCB's banking relationship with Hizbollah" (*id*. ¶ 58), including opening and maintaining the Five Customers' accounts and carrying out the Wire Transfers (*id*. ¶¶ 59, 84-85, 88-89), authorized and implemented official LCB policies and practices (*id*. ¶¶ 112-115), and otherwise participated in or approved the banking services (*id*. ¶¶ 104, 106).  None of these allegations show that Safa was directly involved in these activities, as opposed to simply implicated by virtue of his status as Assistant General Manager of Branches and Operations.  *See PetEdge*, 234 F. Supp. 3d at 493-94 (dismissing fraud claims against corporate officer because they "seem to rest on a belief that Garg is liable because he was a senior officer of TPC and, thus, must bear some personal liability for the acts of the company through his subordinates," allegations which "fail to meet the 'plausibility' standard of Rule 8(a)").  Therefore, Plaintiffs' JASTA aiding-and-abetting claim against Safa must be dismissed.

## POINT III

## ESTER LELCHOOK'S INDIVIDUAL CLAIMS MUST BE DISMISSED

Ester Lelchook's individual claims must also be dismissed against Safa because she is not a U.S. national.  *See* 18 U.S.C. § 2333(a) ("[a]ny *national of the United States* injured . . . by reason of an act of international terrorism . . . may sue therefor") (emphasis added); *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 41 (E.D.N.Y. 2019) (quoting *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1404 (2018)) ("The ATA thus 'excludes foreign nationals (with the possible exception of foreign survivors or heirs)' from its provision providing a cause of action."); *Averbach ex rel. Estate of Averbach v. Cairo Amman Bank*, No. 19-00004, 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020) ("Nowhere in the statute does Congress provide remedies for non-

nationals claiming damages for personal injuries.").  Because Ester Lelchook is not a U.S.

national, she may only assert claims in her representative capacity on behalf of the Estate of

David Martin Lelchook, not in her individual capacity.  *See Lelchook v. Islamic Rep. of Iran*, No.

16-7078, 2020 WL 12656283, at *5 (E.D.N.Y. Nov. 23, 2020) (recommending denial of Ms.

Lelchook's motion for default judgment on her individual ATA claim where "under the plain

language of the statute, because Ester is not a 'national of the United States,' she fails to satisfy

the first statutory prong to establishing her entitlement to relief under the ATA for her own

personal injuries.").

## CONCLUSION

For the foregoing reasons, Defendant Ahmad Safa respectfully requests this Court

dismiss Plaintiffs' claims against him with prejudice.

Respectfully submitted,

Dated: February 14, 2022
  New York, New York

**NIXON PEABODY LLP**

By: */s/ Daniel A. Schnapp*
  Daniel A. Schnapp
  Eric M. Ferrante
  Sarah L. Tufano

  Tower 46
  55 West 46th Street
  New York, NY 10036-4120
  Tel. (212) 940-3000
  dschnapp@nixonpeabody.com
  eferrante@nixonpeabody.com
  stufano@nixonpeabody.com

  *Attorneys for Defendant Ahmad Safa*