# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ESTER LELCHOOK, *et al.*,

                Plaintiffs,

-against-

LEBANESE CANADIAN BANK SAL, *et al.*,

                Defendants.

Case No. 18-cv-12401 (GBD) (KHP)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT MOHAMAD HAMDOUN'S MOTION TO DISMISS AND
## <u>DEFENDANT LEBANESE CANADIAN BANK'S PARTIAL MOTION TO DISMISS</u>

July 11, 2022

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Counsel for Defendants Lebanese Canadian Bank SAL and Mohamad Hamdoun*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .......................................................................................... 3

ARGUMENT ................................................................................................................ 7

I.      LEGAL STANDARDS ..................................................................................... 7

II.     PLAINTIFFS' CLAIM AGAINST MR. HAMDOUN MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. .......................................................... 9

III.    PLAINTIFFS' AIDING-AND-ABETTING CLAIM AGAINST MR. HAMDOUN SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT MR. HAMDOUN OVERSAW OR PARTICIPATED IN LCB'S ALLEGED BANKING SERVICES…................................................................................ 14

IV.    ESTER LELCHOOK'S INDIVIDUAL CLAIMS AGAINST LCB AND MR. HAMDOUN MUST BE DISMISSED BECAUSE SHE IS NOT A U.S. NATIONAL.... 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................8

*Averbach v. Cairo Amman Bank*,
    No. 19-cv-00004-GHW, 2020 U.S. Dist. LEXIS 40430 (S.D.N.Y. Mar. 9,
    2020) ...............................................................................................................18

*Bank v. Verde Energy USA, Inc.*,
    No. 20-4276, 2021 U.S. App. LEXIS 27086 (2d Cir. Sept. 9, 2021) ....................13

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2d Cir. 2001)..............................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................8

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)............................................................11, 12

*Berkshire Bank v. Lloyds Banking Grp. PLC*,
    No. 20-1987-cv, 2022 U.S. App. LEXIS 5095 (2d Cir. Feb. 25, 2022) ..................8

*Blige v. City Univ. of N.Y.*,
    No. 1:15-cv-08873 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8354 (S.D.N.Y.
    Jan. 19, 2017), *adopted*, 2017 U.S. Dist. LEXIS 40928 (Mar. 21, 2017)...............9

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011)..............................................................................13

*Cortec Industries, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991).................................................................................9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..........................................................................................10

*Degraziano v. Verizon Communs., Inc.*,
    325 F. Supp. 2d 238 (E.D.N.Y. 2004) ...............................................................14

*DeLorenzo v. Viceroy Hotel Grp., LLC*,
    757 F. App'x 6 (2d Cir. 2018) .............................................................................7

*Dunn v. Comm'r of Soc. Sec.*,
    832 F. App'x 62 (2d Cir. 2020) ...........................................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..................................................................................................10

 *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 499 (S.D.N.Y.
2016).....................................................................................................................9

*Hau Yin To v. HSBC Holdings PLC*,
No. 15CV3590-LTS-SN, 2017 U.S. Dist. LEXIS 28931 (S.D.N.Y. Mar. 1,
2017), *affirmed*, 700 F. App'x 66 (2d Cir. 2017) ....................................................11

*Jacubovich v. Israel*,
816 F. App'x 505 (2d Cir. 2020) ............................................................................7

*Jazini by Jazini v. Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998).....................................................................................7

*Kaplan. Licci v. Lebanese Canadian Bank*,
732 F.3d 161 (2d Cir. 2013)....................................................................................10

*Kaplan v. Cent. Bank of Islamic Rep. of Iran*,
896 F.3d 501 (D.C. Cir. 2018) .............................................................................3, 4

*Kaplan v. Cent. Bank of the Islamic Rep. of Iran*,
No. 10-CV-00483-RCL (D.D.C.) .............................................................................1

*Kaplan v. Hezbollah*,
No. 19-cv-03187-BMC-ST (E.D.N.Y.) ...................................................................1

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021)....................................................................................1

*Kaplan v. Lebanese Canadian Bank SAL*,
Case No. 08-cv-7253-GBD-KHP (S.D.N.Y.)............................................... *passim*

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998)........................................................................10

*King County v. IKB Deutsche Industriebank AG*,
769 F. Supp. 2d 309 (S.D.N.Y. 2011).....................................................................11

*In re Kingate Mgmt. Ltd. Litig.*,
No. 09-CV-5386 (DAB), 2016 U.S. Dist. LEXIS 129882 (S.D.N.Y. Sep. 21,
2016) .......................................................................................................................14

*Kumer v. Bank Saderat Iran*,
No. 18-CV-07456-ILG-RLM (E.D.N.Y.)................................................................1

*Kumer v. Hezbollah*,
No. 18-CV-07449-CBA-RLM (E.D.N.Y.) ..............................................................1

*Lelchook v. Islamic Rep. of Iran*,
No. 16-CV-7078 (ILG), 2020 U.S. Dist. LEXIS 221606 (E.D.N.Y. Nov. 23,
2020), *adopted in relevant part*, 2022 U.S. Dist. LEXIS 29855 (Feb. 17, 2022)...................18

*Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-CV-00033-RJD-
SJB (E.D.N.Y.) ..........................................................................................................1

*Licci v. American Express Bank Ltd.*,
08 CV 7253 (GBD) (S.D.N.Y. Mar. 31, 2010).........................................................1

*Lishman v. Air & Liquid Sys. Corp.*,
No. 21-cv-001570, 2022 U.S. Dist. LEXIS 66120 (N.D. Ill. Apr. 11, 2022) ........................13

*Lundstedt v. JP Morgan Chase Bank, N.A.*,
853 F. App'x 704 (2d Cir. 2021) ............................................................................13

*In re Lyman Good Dietary Supplements Litig.*,
No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668 (S.D.N.Y. Aug. 6,
2018) ........................................................................................................................15

*Medidata Sols., Inc. v. Veeva Sys.*,
748 F. App'x 363 (2d Cir. 2018) ............................................................................13

*Merck & Co. v. Mediplan Health Consulting*,
425 F. Supp. 2d 402 (S.D.N.Y. 2006)....................................................................12

*Meyer v. Holley*,
537 U.S. 280 (2003).................................................................................................15

*In re NQ Mobile Sec. Litig.*,
No. 13cv7608, 2015 U.S. Dist. LEXIS 40242 (S.D.N.Y. Mar. 27, 2015)..............................17

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr.
Reg.))*,
714 F.3d 659 (2d Cir. 2013).................................................................................7, 9

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
609 F.3d 30 (2d Cir. 2010)........................................................................................7

*Petedge, Inc. v. Garg*,
234 F. Supp. 3d 477 (S.D.N.Y. 2017)....................................................................16

*Pilates, Inc. v. Current Concepts*,
96 Civ. 0043 (MGC), 1996 U.S. Dist. LEXIS 15415 (S.D.N.Y. Oct. 17, 1996)......................9

*Pilates, Inc. v. Pilates Inst.*,
    891 F. Supp. 175 (S.D.N.Y. 1995) ..............................................................9

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)..........................................................................7

*Rosenberg v. Lashkar-e-Taiba*,
    No. 10 CV 5381 (DLI) (CLP), 2016 U.S. Dist. LEXIS 87724 (E.D.N.Y. July
    5, 2016), *adopted in relevant part, modified in part, and dismissed by*, 2017
    U.S. Dist. LEXIS 52116 (Mar. 31, 2017) ...............................................18

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)....................................................................8, 9

*Rothstein v. UBS AG*,
    No. 08-CV-04414-JSR (S.D.N.Y.) ..........................................................1

*Rushaid v. Pictet & Cie*,
    68 N.E.3d 1 (N.Y. 2016)..........................................................................11

*In re September*,
    No. 03-MD-01570, 2022 U.S. Dist. LEXIS 81216 (S.D.N.Y. May 2, 2022)...................13

*Shostack v. Diller*,
    No. 15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777 (S.D.N.Y.
    Sept. 15, 2015), *adopted,* 2016 U.S. Dist. LEXIS 30354 (Mar. 8, 2016)...................12, 15, 16

*Steven Madden, Ltd. v. Jasmin Larian, LLC*,
    2019 U.S. Dist. LEXIS 10423 (S.D.N.Y. Jan. 22, 2019)........................15

*Trisvan v. Heyman*,
    305 F. Supp. 3d 381 (E.D.N.Y. 2018) ...................................................15

*U.S. v. Lebanese Canadian Bank, SAL*,
    11 Civ. 9186 (S.D.N.Y. Oct. 26, 2012) ...................................4, 5, 6, 17

*Yak v. BiggerPockets, L.L.C.*,
    No. 20-3498, 2022 U.S. App. LEXIS 544 (2d Cir. Jan. 7, 2022)............7

**Statutes**

18 U.S.C. § 2333(a) ..............................................................................18, 19

Federal Rules of Civil Procedure
    Rule 12(b)(6)............................................................................................8, 13

**Other Authorities**

76 Fed. Reg. 9403-06 (Feb. 17, 2011) ............................................................17

80 Fed. Reg. 60575-76 (Oct. 7, 2015) .........................................................................................17

Stipulation and Order of Settlement, *U.S. v. Lebanese Canadian Bank SAL*, No.
    11 Civ. 9186-PAE (S.D.N.Y. June 25, 2013), available at
    https://www.justice.gov/sites/default/files/usao-
    sdny/legacy/2015/03/25/U.S.%20v.%20Lebanese%20Canadian%20Bank%20
    Settlement%20Order.pdf .........................................................................................................4

# PRELIMINARY STATEMENT

This action involves substantially the same alleged facts as a related action pending before this Court, *Kaplan v. Lebanese Canadian Bank SAL*, Case No. 08-cv-7253-GBD-KHP (S.D.N.Y.) ("*Kaplan*").[1]  Both in *Kaplan* and here, Plaintiffs allege injuries arising from rocket attacks in Israel perpetrated by Hezbollah in July and August 2006, during the Second Lebanon War (hereinafter the "Rocket Attacks").  In a number of other lawsuits across multiple jurisdictions, Plaintiffs have asserted claims arising from those same Rocket Attacks against, *inter alia*, Hezbollah itself; the governments of Iran and North Korea; the Qatar-based media company Al Jazeera; Iran's largest bank, Bank Saderat; a Swiss financial institution, UBS; and numerous other Lebanese banks.[2]

However, unlike in *Kaplan*, in which Lebanese Canadian Bank ("LCB") is the sole defendant, Plaintiffs here have added an individual defendant, Defendant Mohamad Hamdoun ("Mr. Hamdoun").  The Second Circuit's *Kaplan* decision concerning Plaintiffs' aiding-and-abetting claim against LCB under the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA") nowhere mentions Mr. Hamdoun, and does not consider the sufficiency of any claim against him.[3]  Plaintiffs' belated decision to add Mr. Hamdoun as a defendant, on the eve of the expiration of the limitations period in this look-alike action against LCB cannot be sustained based on the *Kaplan* decision.  Nor can it be sustained on

---

[1] *Kaplan* was originally captioned *Licci v. American Express Bank Ltd.*  The claims against American Express Bank were dismissed by this Court in a Memorandum Decision and Order dated March 31, 2010.  *See Kaplan*, ECF No. 53.

[2] *See, e.g., Kumer v. Hezbollah*, No. 18-CV-07449-CBA-RLM (E.D.N.Y.); *Kaplan v. Hezbollah*, No. 19-cv-03187-BMC-ST (E.D.N.Y.); *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, No. 10-CV-00483-RCL (D.D.C.); *Kumer v. Bank Saderat Iran*, No. 18-CV-07456-ILG-RLM (E.D.N.Y.); *Rothstein v. UBS AG*, No. 08-CV-04414-JSR (S.D.N.Y.); *Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-CV-00033-RJD-SJB (E.D.N.Y.).

[3] *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021).  Plaintiffs abandoned all other claims against LCB, including those for ATA primary liability and JASTA conspiracy.

1

its own terms, because Plaintiffs' allegations against Mr. Hamdoun—even after embellishment through amendment of the original Complaint—are entirely conclusory, and do not plausibly allege that Mr. Hamdoun was a primary actor in LCB's alleged wrongdoing. The Amended Complaint's failure to allege plausibly that Mr. Hamdoun participated in or directly oversaw LCB's alleged wrongdoing forecloses jurisdiction over Mr. Hamdoun and, alternatively, the sufficiency of a claim against him. Instead, as the extrinsic evidence incorporated into the Amended Complaint demonstrates, Mr. Hamdoun was only one of multiple senior managers of LCB. Indeed, in separate legal proceedings against LCB previously pursued by the United States Government against LCB, the Government expressly acknowledged that it had not pursued a claim against Mr. Hamdoun, unlike the position the Government took as to another former LCB manager who Plaintiffs here previously sued but silently excused from their Amended Complaint. Under these circumstances, Plaintiffs' aiding-and-abetting claim against Mr. Hamdoun should be dismissed, and Plaintiffs should be confined to their claim against LCB.

First, Plaintiffs have not plausibly alleged that this Court has personal jurisdiction over Mr. Hamdoun. The Amended Complaint does not allege that Mr. Hamdoun himself transacted any business in New York from which Plaintiffs' claims arise. Prior rulings from *Kaplan* regarding personal jurisdiction over <u>LCB</u> based on its correspondent-banking transactions in the United States cannot apply to <u>Mr. Hamdoun</u> here, because Plaintiffs do not allege either any specific involvement by Mr. Hamdoun in such LCB transactions, or any other suit-related contact between Mr. Hamdoun and the United States.

Second, and alternatively, Plaintiffs' JASTA aiding-and-abetting claim against Mr. Hamdoun is legally insufficient, because Plaintiffs have not plausibly alleged that Mr. Hamdoun himself participated in or directly oversaw LCB's alleged wrongful conduct. Plaintiffs improperly

seek to attribute LCB's alleged actions to Mr. Hamdoun based solely on conclusory assertions that Mr. Hamdoun "authorized," "directed," or "carried out" the LCB banking services from which the claim against LCB arises.[4]

Notably, the test for jurisdiction over Mr. Hamdoun and the test for the legal sufficiency of a claim against him as an LCB officer are functionally the same—both require plausible allegations that Mr. Hamdoun was a primary actor in LCB's alleged wrongdoing. Equally, the same set of allegations, and the same extrinsic evidence incorporated into the Amended Complaint, foreclose a finding that Plaintiffs have satisfied either of those overlapping tests.

Finally, Plaintiffs' Amended Complaint identifies Ester Lelchook as bringing this action "individually and on behalf of the Estate of David Martin Lelchook." Am. Compl. ¶ 4. Ester Lelchook's individual claims against <u>both LCB and Mr. Hamdoun</u> must be dismissed because she is not a U.S. national, and therefore does not have standing to sue under the ATA to assert claims for her own injuries.

## STATEMENT OF FACTS

Plaintiffs' factual allegations here are substantially identical to those in *Kaplan*. The 27 Plaintiffs (with the exception of Ester Lelchook) are U.S. citizens who claim that they were injured by Rocket Attacks perpetrated by Hezbollah in Israel in July and August 2006. *See* Am. Compl. ¶¶ 1-2, 4-8, 63. The Second Lebanon War began on June 12, 2006, when "Hezbollah militants left Lebanon, crossed the Israeli border, and kidnapped and killed several Israeli soldiers." *Kaplan v. Cent. Bank of Islamic Rep. of Iran*, 896 F.3d 501, 505 (D.C. Cir. 2018). "Israel responded by mounting a ground offensive in Lebanon and deploying a bombing campaign against Hezbollah."

---

[4] In their original Complaint, Plaintiffs asserted ATA material-support and JASTA conspiracy claims against Mr. Hamdoun (among other individual Defendants), before abandoning them in the Amended Complaint.

*Id.* "Hezbollah then initiated a campaign of rocket attacks, firing thousands of unguided rockets into civilian populations in northern Israel, striking cities, towns, and villages. The conflict ended on August 14, 2006, when the United Nations brokered a cease-fire between Hezbollah, Israel, and Lebanon." *Id.*

Plaintiffs allege that David Martin Lelchook was killed in a Rocket Attack on August 2, 2006, causing his death and emotional and financial injuries to his family. Am. Compl. ¶¶ 2, 65-67. Two other Plaintiffs, Chaim Kaplan and Rivka Kaplan, allege that they suffered physical and emotional injuries caused by a rocket that landed near Chaim Kaplan's car and another that struck their home. *Id.* ¶ 73. Another Plaintiff, Karen Erdstein, claims that Rocket Attacks "near the Erdstein home" caused her stress and anxiety, resulting in a miscarriage. *Id.* ¶ 74. Another, Avishai Reuvane, alleges that a rocket struck his home and knocked him unconscious. *Id.* ¶ 81. The other Plaintiffs allege that they suffered emotional injuries from the Rocket Attacks. *Id.* ¶¶ 70-83.

LCB was a commercial bank organized under the laws of Lebanon and headquartered in Beirut, Lebanon. *Id.* ¶ 9. LCB ceased its banking operations in 2011, and decided to sell its assets and liquidate following allegations against it by the U.S. Treasury Department—none of which relates to the Rocket Attacks. *See* Verified Amended Complaint, *U.S. v. Lebanese Canadian Bank, SAL*, 11 Civ. 9186-PAE (S.D.N.Y. Oct. 26, 2012) (the "Forfeiture Complaint") (cited in Am. Compl. ¶ 104); Stipulation and Order of Settlement, *U.S. v. Lebanese Canadian Bank SAL*, No. 11 Civ. 9186-PAE (S.D.N.Y. June 25, 2013) (the "Settlement Order"), ECF No. 462, at 203.[5] The Forfeiture Complaint—on which Plaintiffs' Amended Complaint is wholly based—contains no

---

[5] The Settlement Order is also available at https://www.justice.gov/sites/default/files/usao-sdny/legacy/2015/03/25/U.S.%20v.%20Lebanese%20Canadian%20Bank%20Settlement%20Order.pdf (last visited July 6, 2022).

mention of Mr. Hamdoun and makes no claim against him, as the U.S. Government acknowledged in the Settlement Order (¶ 14 & Schedule A). Further, LCB resolved those allegations with no admission of wrongdoing. Tellingly, the Forfeiture Complaint (¶¶ 47(g), 48(c-d)) contained multiple allegations of wrongdoing by another former LCB officer, Ahmad Safa, whom Plaintiffs named as a defendant in their original Complaint, but dropped from their Amended Complaint. The Settlement Order (¶ 14 & Schedule A) does not contain a disclaimer of claim against Mr. Safa.

Plaintiffs allege that Hezbollah "is, and at all relevant times was, a complex, composite organization, which is composed of various subordinate entities which were created, and are entirely controlled, by Hizbollah." Am. Compl. ¶ 28. Plaintiffs allege that three of these "subordinate entities" are the Shahid (Martyrs) Foundation ("Shahid"), Bayt al-Mal, and the Yousser Company for Finance and Investment ("Yousser"). *Id.* ¶¶ 29-31. Plaintiffs do <u>not</u> allege that any of these three entities was designated as a terrorist or terrorist organization by the U.S. government prior to or at the time of the Rocket Attacks.

Plaintiffs do not allege that Mr. Hamdoun is or was a member of, or affiliated with, Hezbollah. Nor do Plaintiffs allege that Mr. Hamdoun participated in, authorized, or had any advance knowledge of, any of the Rocket Attacks. Instead, Plaintiffs allege that Mr. Hamdoun, as LCB's Deputy General Manager, is liable for the Rocket Attacks solely because <u>LCB</u> maintained bank accounts and processed wire transfers for Shahid, Bayt al-Mal, and Yousser. *Id.* ¶¶ 45-47. But Plaintiffs do not provide any allegations of wrongdoing specific to Mr. Hamdoun; instead, Plaintiffs seek only to attribute LCB's alleged actions to Mr. Hamdoun based on his senior-management role.

In both *Kaplan* and here, Plaintiffs allege that the Bayt al-Mal accounts were "nominally listed in the names of Bayt al-Mal," as well as "Hezbollah leaders Husayn al-Shami . . . and Wahid

Mahmoud Sbeity, . . ." *Compare id.* ¶ 46, *with Kaplan*, 405 F. Supp. 3d 525, 529 (S.D.N.Y. 2019) (noting *Kaplan* plaintiffs' identical allegations that LCB maintained accounts for the same alleged customers). In both actions, Plaintiffs allege that these accounts, the funds held in them, and the transactions carried out on them, "belonged to Hizbollah and were under the control of Hizbollah." *Compare* Am. Compl. ¶¶ 49-51, *with Kaplan*, 405 F. Supp. 3d at 529 (noting same allegations in *Kaplan*). Plaintiffs also allege that, "between 2004 and July 12, 2006 (and subsequently), Hizbollah made and received" wire transfers through LCB "totaling many millions of dollars." *Compare* Am. Compl. ¶ 53, *with Kaplan* 405 F. Supp. 3d at 529 (noting same allegations).

Plaintiffs attempt to attribute LCB's alleged actions to Mr. Hamdoun only by alleging that somehow, at some unspecified time and in some unspecified manner, Mr. Hamdoun "initiated and authorized LCB's banking relationship with Hizbollah," including the aforementioned accounts and wire transfers. Am. Compl. ¶ 60. By contrast, Plaintiffs allege that Ahmad Safa—the former LCB executive against whom the U.S. Government made allegations in the Forfeiture Complaint—"opened" and "managed" the accounts "on a day-to-day basis" and "carried out" the wire transfers, pursuant to some unspecified "direction and authorization" from Mr. Hamdoun. *Id.* ¶ 62. Plaintiffs do not allege any dates, places, or manner of any such alleged "initiat[ion]," "authoriz[ation]," "open[ing]," "manag[ing]," "carr[ying] out," "direction," or "authorization" by Mr. Hamdoun.

Further, Plaintiffs do <u>not</u> allege that Mr. Hamdoun provided funds directly to Hezbollah. Likewise, Plaintiffs do not allege in anything but conclusory terms how Mr. Hamdoun, as LCB's Deputy General Manager, participated in providing the alleged customers with the banking services at issue here.

Plaintiffs also fail to allege any facts supporting the exercise of jurisdiction over Mr. Hamdoun. The Amended Complaint alleges no conduct by Mr. Hamdoun either in or targeting New York, except for the conclusory, fact-free assertion that Mr. Hamdoun, at an unknown time and in an unspecified manner, authorized the wire transfers processed by LCB's correspondent bank in New York. Such conclusory assertions cannot be credited for jurisdictional purposes, and LCB's alleged contacts with New York cannot be imputed to Mr. Hamdoun solely on the basis of his title as LCB's former Deputy General Manager. Plaintiffs provide no non-conclusory allegations that Mr. Hamdoun exercised control over LCB's jurisdictionally-relevant conduct—in this case, the wire transfers for the alleged customers.

## ARGUMENT

## I.  LEGAL STANDARDS

Plaintiffs bear the burden of establishing personal jurisdiction, and must make a *prima facie* showing that personal jurisdiction exists over each defendant. *E.g. Jacubovich v. Israel*, 816 F. App'x 505, 511 (2d Cir. 2020) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010)). In doing so, plaintiffs must allege facts that, if credited, would suffice to establish jurisdiction over the defendant. *Yak v. BiggerPockets, L.L.C.*, No. 20-3498, 2022 U.S. App. LEXIS 544, at *2-3 (2d Cir. Jan. 7, 2022) (citing *Penguin Group*, 609 F.3d at 35). Legal conclusions couched as factual allegations do not suffice as a *prima facie* showing of jurisdiction, *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (citing *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)), and courts "will not draw argumentative inferences in the plaintiff's favor." *O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*, 714 F.3d 659, 673 (2d Cir. 2013) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted); *Kaplan*, 405 F. Supp. 3d at 531 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "The plaintiff must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully'; stating a facially plausible claim requires the plaintiff to plead facts that enable the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 531 (quoting *Iqbal,* 556 U.S. at 678). "A district court must first review a plaintiff's complaint to identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679).

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may consider "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken." *E.g. Berkshire Bank v. Lloyds Banking Grp. PLC*, No. 20-1987-cv, 2022 U.S. App. LEXIS 5095, at *14 n.5 (2d Cir. Feb. 25, 2022) (citation omitted and alteration in original); *accord Dunn v. Comm'r of Soc. Sec.*, 832 F. App'x 62, 63 (2d Cir. 2020) ("[A] district court may consider certain materials on a motion to dismiss, including documents attached to the pleading or incorporated by reference, which are 'deemed part of the pleading.'") (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *Roth*, 489 F.3d at 509 ("In addition, even if not attached or incorporated by reference, a document 'upon which [the complaint] <u>solely</u> relies and which is <u>integral to the complaint</u>' may

be considered by the court in ruling on such a motion.") (quoting *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphases included in *Roth*). A court may also consider such materials for the purpose of adjudicating a motion to dismiss for lack of jurisdiction. *Blige v. City Univ. of N.Y.,* No. 1:15-cv-08873 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8354, at *14 (S.D.N.Y. Jan. 19, 2017) ("[W]here jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.") (citing *Graham v. Select Portfolio Servicing, Inc.,* 156 F. Supp. 3d 491, 499 (S.D.N.Y. 2016)), *adopted,* 2017 U.S. Dist. LEXIS 40928 (Mar. 21, 2017).

## II. PLAINTIFFS' CLAIM AGAINST MR. HAMDOUN MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

The claim against Mr. Hamdoun should be dismissed because Plaintiffs have not met their burden to establish a *prima facie* basis for personal jurisdiction over him. Indeed, the Amended Complaint does not plausibly aver <u>any</u> jurisdictionally-relevant facts regarding Mr. Hamdoun.

While, in *Kaplan*, it has been determined that Plaintiffs have plausibly alleged personal jurisdiction over <u>LCB</u>, that determination does not extend to Mr. Hamdoun in this action based on his previous roles at LCB. "[It] [is] well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation."). *O'Neill v. Asat Tr. Reg.,* 714 F.3d at 681 (citation omitted); *Pilates, Inc. v. Pilates Inst.,* 891 F. Supp. 175, 180-81 (S.D.N.Y. 1995); *see* (*Pilates, Inc. v. Current Concepts,* 96 Civ. 0043 (MGC), 1996 U.S. Dist. LEXIS 15415, at *8 (S.D.N.Y. Oct. 17, 1996) (granting corporate executive's motion to dismiss because "vague allegation that [he] 'controlled' [the defendant-corporation]" was insufficient and plaintiff "ha[d] not made a prima facie showing of personal jurisdiction over [him]"). Plaintiffs' allegations fail

to establish an independent *prima facie* showing of jurisdiction over Mr. Hamdoun, as required under New York law, and therefore their sole JASTA claim against Mr. Hamdoun must be dismissed.

Plaintiffs cannot, and do not attempt to, argue that general, *i.e.*, all-purpose, jurisdiction exists over Mr. Hamdoun.[6] And any argument that specific, *i.e.*, conduct-linked, jurisdiction exists over him also must fail because Plaintiffs have not alleged any facts connecting Mr. Hamdoun to LCB's alleged wire transfers processed through American Express Bank Ltd. ("Amex Bank"), LCB's correspondent bank during the relevant time-period. Those alleged transfers were the basis on which <u>LCB</u> has been found subject to personal jurisdiction in *Kaplan. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170-71 (2d Cir. 2013). But the Amended Complaint's allegations regarding transfers through Amex Bank simply do not mention any alleged involvement by Mr. Hamdoun. *See* Am. Compl. ¶¶ 43 ("LCB sought and entered into a business relationship with American Express . . . ."); *id.* ¶ 44 ("Amex Bank served as a correspondent bank for LCB between 2004 (or earlier) and until July 12, 2006 (and later)."); *id.* ¶¶ 52, 54-56 (alleging that LCB provided wire transfer services via Amex Bank). Plaintiffs' conclusory, fact-free allegations that, in an unspecified manner, on unspecified date(s), and an unspecified number of times, Mr. Hamdoun "authorized" the wire transfers, or that Ahmad Safa "carried out" the transfers "pursuant to the [unspecified] direction and authorization of Hamdoun", are insufficient to support the exercise of jurisdiction over Mr. Hamdoun. *Id.* ¶¶ 60, 62; *see Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324-26 (S.D.N.Y. 1998) (dismissing complaint that only "generally allege[d] that" corporation's wrongful conduct was done "at the direction of [individual] defendants" because it was "devoid of

---

[6] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played"); *cf. Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 401 n.21 (S.D.N.Y. 2021) (finding that "the conclusory allegation that [individual defendant] directed his money laundering efforts at BNYM, a New York-based bank," [was] ineffective to confer jurisdiction") (cleaned up).

The exercise of personal jurisdiction over foreign-bank executives based on the bank's use of a New York correspondent-bank account requires that the executives controlled, or were otherwise directly involved in, the transactions processed through that account. *See Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 4-6, 5 n.3, 14 (N.Y. 2016) (noting that defendant-bank's vice-president had "designed and orchestrated" the money-laundering scheme, had "opened and actively managed" the relevant bank accounts, and had "set up an offshore 'bogus' company to receive" the fund transfers processed through New York); *see also Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 U.S. Dist. LEXIS 28931, at *18 n.7 (S.D.N.Y. Mar. 1, 2017) (dismissing claims against foreign affiliates of U.S. bank and distinguishing *Rushaid* because the "wiring of funds through New York in this case, however, was passive, rather than 'integral'" to the defendants' alleged wrongful conduct), *affirmed*, 700 F. App'x 66 (2d Cir. 2017).

Plaintiffs have not alleged that Mr. Hamdoun exercised control over LCB's establishment of any relationship with any correspondent bank, including Amex Bank, or that Mr. Hamdoun had any other purposeful contacts with New York. *See* Am. Compl. ¶¶ 43-44, 52, 54-56. Plaintiffs attempt to attribute LCB's alleged jurisdictional contacts with New York to Mr. Hamdoun solely because he held a senior position at LCB, but Plaintiffs may not impute LCB's jurisdictional contacts with New York to Mr. Hamdoun without establishing that he "exercised control over [LCB's] activities in New York." *King County v. IKB Deutsche Industriebank AG*, 769 F. Supp.

2d 309, 320-21 (S.D.N.Y. 2011) (dismissing claims against two foreign-bank executives because plaintiffs "provide[d] no basis for the Court to determine whether [either executive] was a <u>primary actor</u> orchestrating the allegedly tortious conduct, or . . . . named in the complaint simply because" of their senior positions in the corporation) (emphasis added). "Control cannot be shown based merely upon [Mr. Hamdoun's] title" of Deputy General Manager. *Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 418-20 (S.D.N.Y. 2006) (dismissing claim against foreign CEO where "plaintiff fail[ed] to allege any specific actions on the [CEO's] part"); *see Berdeaux*, 561 F. Supp. 3d at 401-02 (finding, after "[s]tripping away the wholly conclusory allegations," that the factual allegation that an individual defendant "was aware that a New York account would be used . . . [was] patently insufficient under New York law to constitute the transaction of business.") (citations omitted).

Nor should the Court permit Plaintiffs to circumvent their burden of establishing jurisdiction over Mr. Hamdoun by arguing that he has waived his personal-jurisdiction defense. Mr. Hamdoun has consistently objected to the sufficiency of Plaintiffs' allegations against him in this action,[7] and the pleading requirements are substantively the same for both jurisdiction and legal-sufficiency. *See, e.g.*, *Shostack v. Diller,* No. 15-CV-2255 (GBD) (JLC), 2015 U.S. Dist. LEXIS 123777, at *12-13 (S.D.N.Y. Sept. 15, 2015) (Report & Recommendation) (noting, in its Rule 12(b)(2) analysis, plaintiff's failure to "allege[] that the individual defendants had any direct involvement in the actions giving rise to this litigation" and noting, in its Rule 12(b)(6) analysis, plaintiff's failure to "ple[ad] any facts to demonstrate that the individual defendants themselves

---

[7] *See* Defs.' Mot. to Dismiss, ECF No. 41, at 3 ("Plaintiffs' aiding-and-abetting claim against Hamdoun also fails because Plaintiffs do not plausibly allege that Hamdoun himself participated in or directly oversaw LCB's allegedly wrongful conduct."); *id.* at 6 ("Nor do Plaintiffs allege that . . . Hamdoun . . . participated in, or had advance knowledge of, any of the Rocket Attacks."); *id.* at 17-18 ("Plaintiffs have failed to plausibly allege facts showing that Hamdoun participated in or directly oversaw LCB's allegedly wrongful acts."); *id.* at 18 (Plaintiffs' allegations are "insufficient to impute LCB's acts to Hamdoun, . . . requiring dismissal of Plaintiffs' claim against Hamdoun.").

engaged in the actions . . . , directed or authorized them, or were even aware of them"), *adopted,* 2016 U.S. Dist. LEXIS 30354, at *7-8 (Mar. 8, 2016).

Courts "consider all of the relevant circumstances" "[i]n determining whether waiver or forfeiture of objections to personal jurisdiction has occurred." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133-34 (2d Cir. 2011) (internal quotation omitted). Plaintiffs amended their original Complaint prior to any substantive developments in this litigation, such that every pleading prior to the filing of the Amended Complaint is a nullity. *E.g. Lundstedt v. JP Morgan Chase Bank, N.A.*, 853 F. App'x 704, 706-07 (2d Cir. 2021) ("[I]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (citation omitted).[8] Moreover, in amending their original Complaint, Plaintiffs added multiple new allegations regarding Mr. Hamdoun,[9] and while these allegations are all conclusory for Rule 12(b)(6) purposes, their addition crystallized the absence of any basis for personal jurisdiction over Mr. Hamdoun when one was less clear previously.

Finally, Mr. Hamdoun had not attempted to "test the waters" prior to asserting his jurisdictional defense. *Lishman v. Air & Liquid Sys. Corp.*, No. 21-cv-001570, 2022 U.S. Dist. LEXIS 66120, at *10-11 (N.D. Ill. Apr. 11, 2022) (finding that defendant's "delay in asserting the [jurisdictional] defense [was] therefore excusable."). At this preliminary stage of litigation, when

---

[8] *See also Medidata Sols., Inc. v. Veeva Sys.*, 748 F. App'x 363, 365 (2d Cir. 2018) ("It is hardly a novel proposition that an amended complaint ordinarily supersedes the original and renders it of no legal effect.") (internal quotation and citation omitted); *In re September*, No. 03-MD-01570, 2022 U.S. Dist. LEXIS 81216, at *110 (S.D.N.Y. May 2, 2022) (finding that amendment of complaints on which two defendants had defaulted "mooted those defaults"); *id.* at 108 ("[C]ourts in this Circuit consistently find that when an amended complaint becomes operative entries of default predicated on the original complaint are mooted."); *Bank v. Verde Energy USA, Inc.*, No. 20-4276, 2021 U.S. App. LEXIS 27086, at *4-5 (2d Cir. Sept. 9, 2021) (affirming holding that plaintiff's notice of dismissal regarding an allegation and claim in original complaint had no legal effect "because the original complaint had already been superseded by his amended complaint") (internal quotation and citation omitted).

[9] *See* Am. Compl. ¶¶ 58-61, 87, 104, 109, 115-19.

neither party has begun to take discovery, Plaintiffs cannot claim that "[they] ha[ve] been prejudiced in any way" by Mr. Hamdoun's assertion of his personal-jurisdiction defense in response to the Amended Complaint. *Degraziano v. Verizon Communs., Inc.*, 325 F. Supp. 2d 238, 244 (E.D.N.Y. 2004) (noting that "the parties [had] not engage[d] in meaningful litigation" and finding no express waiver).[10] This Court should find that Mr. Hamdoun has not waived his personal-jurisdiction defense, and that Plaintiffs have not met their burden of establishing a *prima facie* case for jurisdiction over Mr. Hamdoun.

### III. PLAINTIFFS' AIDING-AND-ABETTING CLAIM AGAINST MR. HAMDOUN SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT MR. HAMDOUN OVERSAW OR PARTICIPATED IN LCB'S ALLEGED BANKING SERVICES.

Notwithstanding the Second Circuit's revival of the *Kaplan* Plaintiffs' JASTA aiding-and-abetting claim against LCB, Plaintiffs' allegations against Mr. Hamdoun are inadequate to support a JASTA aiding-and-abetting claim against him in this action. Plaintiffs' Amended Complaint does little more than allege, in conclusory fashion, that Mr. Hamdoun "set the policy approving, initiated, directed, authorized, and carried out . . . LCB's actions," and that Mr. Hamdoun "initiated and authorized LCB's banking relationship with Hizbollah, including the opening and maintenance of the" accounts for the alleged customers and the "processing" of the wire transfers for those customers. Am. Compl. ¶¶ 59-60. Such fact-free allegations, devoid of any specificity, are insufficient to plausibly allege that Mr. Hamdoun participated in LCB's provision of banking services to the alleged customers.

---

[10] *See also In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 U.S. Dist. LEXIS 129882, at *108-10 (S.D.N.Y. Sep. 21, 2016) (finding that a defendant had "not technically waived [its] personal jurisdiction defense" when first raising it in response to the plaintiffs' second amended complaint, but finding waiver because the defendant first raised the defense after "several years and engag[ing] in substantial pretrial proceedings") (emphasis added, citation omitted).

"It is a well-settled principle of New York law that a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive's company <u>only if the executive participated in or directly oversaw</u> the allegedly tortious conduct." *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 n.24 (E.D.N.Y. 2018) (emphasis added) (citation omitted); *see Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) ("Under New York law, a corporate officer who <u>commits or participates in a tort</u> . . . may be held individually liable.") (emphasis added; citation and internal quotations omitted). It is "well-established that 'absent special circumstances[,] it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.'" *Shostack*, 2015 U.S. Dist. LEXIS 123777, at *12-13 (quoting *Meyer v. Holley,* 537 U.S. 280, 286 (2003)) (alteration in original).

Plaintiffs have not "alleged <u>precise</u> facts demonstrating [Mr. Hamdoun's] involvement" in LCB's alleged conduct, as required to assert an independent claim against him. *Steven Madden, Ltd. v. Jasmin Larian, LLC*, 2019 U.S. Dist. LEXIS 10423, at *13-15 (S.D.N.Y. Jan. 22, 2019) (dismissing claim against corporate officer after finding the pleadings "contain[ed] no factual allegations as to [his] <u>specific</u> role in the purported infringement . . . but merely state[d] conclusory allegations that conflate[d] the Company's actions with [his] own.") (emphasis added).[11] Instead of providing specific allegations regarding Mr. Hamdoun's own actions, Plaintiffs seem to suggest that LCB's alleged conduct should automatically be imputed to Mr. Hamdoun "merely by reason of his office," contrary to longstanding principles of tort law. *See, e.g.*, *In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668, at *14-17 (S.D.N.Y.

---

[11] Throughout their Amended Complaint, Plaintiffs repeatedly and improperly engage in group pleading, failing to distinguish between <u>Mr. Hamdoun's</u> alleged actions and those of <u>LCB</u>. *See* Am. Compl. ¶ 87 (alleging that wire transfers were "carried out by LCB and Hamdoun" and that banking services were "provided by LCB and Hamdoun"), ¶ 118 (same).

Aug. 6, 2018) (dismissing claims against individual defendants after finding plaintiff's allegations "inadequate" because they only "show[ed] that the Individual Defendants were high-level officers with wide-ranging authority over their respective corporations").[12]

Courts dismiss claims where, as here, a plaintiff "merely tacks on conclusory assertions" in an effort to impute a corporation's alleged conduct to a corporate officer. *See Petedge, Inc. v. Garg*, 234 F. Supp. 3d 477, 492-94 (S.D.N.Y. 2017) (dismissing claims against officer and holding that there were no "particularized factual allegations to support" conclusory assertions that corporation's wrongdoing was "at [officer's] direction," "with [officer's] knowledge and approval," and "as part of [officer's] scheme") (citing cases). Such assertions, "unlike factual allegations, are <u>not</u> granted the presumption of truth on a motion to dismiss." *Shostack*, 2015 U.S. Dist. LEXIS 123777, at *14 (emphasis added).

Plaintiffs' allegations against Mr. Hamdoun consist of nothing more than unsupported, generalized "speculation and legal conclusions." *Shostack*, 2016 U.S. Dist. LEXIS 30354, at *8. Plaintiffs offer no factual support for their claims, only threadbare assertions that Mr. Hamdoun "authorized and implemented" LCB's policies and practices, Am. Compl. ¶¶ 115-17; that LCB acted with Mr. Hamdoun's "approval and participation," *id.* ¶¶ 107, 109; and that <u>another</u> LCB manager—Ahmad Safa—"organized, directed[,] and carried out . . . LCB's actions" "pursuant to the instructions of Hamdoun,"[13] *id.* ¶ 61. *See also Shostack*, 2016 U.S. Dist. LEXIS 30354, at *8 (dismissing claims against corporate executives where plaintiff "failed to plead any <u>facts</u> showing that the individual defendants participated, directed, were aware of, or benefitted from, the actions

---

[12] In amending their original Complaint, Plaintiffs did little more than add allegations regarding Mr. Hamdoun's various roles at LCB. *See* Am. Compl. ¶¶ 57-58 (alleging that Mr. Hamdoun's roles as part of LCB's management and board of directors "made Hamdoun one of the two most senior managers and policy-makers . . . and gave him control over LCB's policies and activities.").

[13] In amending their original Complaint, Plaintiffs abandoned their claims against that manager, Ahmad Safa, as well as their claims against five other "John Doe" defendants.

on which he base[d] his claims") (emphasis added); *In re NQ Mobile Sec. Litig.*, No. 13cv7608, 2015 U.S. Dist. LEXIS 40242, at *6-8 (S.D.N.Y. Mar. 27, 2015) (dismissing claims where plaintiffs "offer[ed] no facts to substantiate their conclusory allegations" and simply alleged that one defendant-corporation engaged in the wrongful conduct at issue "on the authority of, at the direction of, under the control of, and for the sole benefit of" an affiliated corporate defendant).

Plaintiffs' incorporate into their Amended Complaint certain materials from the U.S. government's investigation of LCB for conduct unrelated to the Rocket Attacks, but those materials cannot compensate for the shortcomings of the Amended Complaint's allegations against Mr. Hamdoun. First, Plaintiffs cite a Financial Crimes Enforcement Network ("FinCEN") Notice of Finding, *see* Am. Compl. ¶ 119(c), but that Notice referred generically, and not by name, to a number of different individuals, *see* 76 Fed. Reg. 9403-06 (Feb. 17, 2011). Second, the Amended Complaint incorporates by reference allegations from the Forfeiture Complaint against LCB. *See* Am. Compl. ¶ 104 (citing Forfeiture Complaint). But the Forfeiture Complaint did not allege any wrongdoing by Mr. Hamdoun; in fact, the Forfeiture Complaint did not allege any wrongdoing by any LCB executive other than Ahmad Safa. *See* Forfeiture Complaint, ¶¶ 47(g), 48(c)-(d). The U.S. Government later confirmed that it had not asserted any claim against Mr. Hamdoun, but notably, did not include Ahmad Safa within that concession. *See* Settlement Order, ¶ 14, Schedule A (listing, *inter alia*, "Hamdoun[,] Mohamad Ibrahim"); 80 Fed. Reg. 60575-76 (Oct. 7, 2015) (withdrawing Notice of Finding). Yet in amending their original Complaint, Plaintiffs silently abandoned their claims against Mr. Safa, choosing instead to pursue a baseless claim against Mr. Hamdoun. Given Plaintiffs' wholesale reliance on the Forfeiture Complaint—whose allegations Plaintiffs' Amended Complaint mirrors—the Government's concession as to Mr. Hamdoun, alongside the absence of any such concession as to Mr. Safa, entirely undermines the plausibility

of Plaintiffs' conclusory allegations against Mr. Hamdoun. Plaintiffs have not plausibly alleged any direct participation by Mr. Hamdoun in LCB's alleged conduct, requiring dismissal of the Amended Complaint's claim against him for legal insufficiency.

**IV.**     **ESTER LELCHOOK'S INDIVIDUAL CLAIMS AGAINST LCB AND MR. HAMDOUN MUST BE DISMISSED BECAUSE SHE IS NOT A U.S. NATIONAL.**

The ATA provides, in relevant part, that "[a]ny national of the United States injured . . . by reason of an act of international terrorism . . . may sue therefor" in a U.S. district court. 18 U.S.C. § 2333(a). As alleged in the Amended Complaint, all of the Plaintiffs are U.S. nationals, with the exception of Ester Lelchook. Ms. Lelchook is a "foreign national," not a U.S. national. *See Lelchook v. Islamic Rep. of Iran*, No. 16-CV-7078 (ILG), 2020 U.S. Dist. LEXIS 221606, at *4, *7 (E.D.N.Y. Nov. 23, 2020) (Report & Recommendation), *adopted in relevant part*, 2022 U.S. Dist. LEXIS 29855 (Feb. 17, 2022). She purports to assert claims here both "individually and on behalf of the Estate of David Martin Lelchook." Am. Compl. ¶ 4. However, because Ester Lelchook is not a U.S. national, under the ATA's plain language, she does not have standing to sue for her own injuries. The ATA gives Ms. Lelchook standing <u>only</u> to sue in a representative capacity on behalf of a U.S. national allegedly killed as a result of a Rocket Attack—*i.e.*, as that person's estate, survivor, or heir. *See Lelchook*, U.S. Dist. LEXIS 221606, at *12, *19 (recommending denial of Ester Lelchook's motion for default judgment on her individual ATA claim because "[t]he ATA does not include language authorizing foreign nationals to bring ATA claims in a U.S. court for their own injuries"); *Averbach v. Cairo Amman Bank*, No. 19-cv-00004-GHW, 2020 U.S. Dist. LEXIS 40430, at *11 (S.D.N.Y. Mar. 9, 2020) (Mem. Op. & Order) ("Nowhere in the [ATA] does Congress provide remedies for non-nationals claiming damages for personal injuries."); *Rosenberg v. Lashkar-e-Taiba*, No. 10 CV 5381 (DLI) (CLP), 2016 U.S. Dist. LEXIS 87724, at *61-65 (E.D.N.Y. July 5, 2016) (Report & Recommendation) (discussing ATA's

legislative history and concluding that "the phrase 'or his or her estate, survivors, or heirs' was included in a revision to the statute to 'make certain the ability of family members to file a lawsuit on behalf of a slain or injured relative'" and that "the statute is clear that only claims brought on behalf of individuals who are United States nationals may proceed under the ATA") (emphasis in original), *adopted in relevant part, modified in part, and dismissed by*, 2017 U.S. Dist. LEXIS 52116 (Mar. 31, 2017).

Based on the plain language of 18 U.S.C. § 2333(a), Ester Lelchook cannot sue in her individual capacity, only in her representative capacity on behalf of the Estate of David Martin Lelchook.  Her individual claims against both LCB and Mr. Hamdoun must be dismissed.

## CONCLUSION

For the reasons set forth above, the Amended Complaint should be dismissed in its entirety as against Mr. Hamdoun.  Further, Ester Lelchook's individual claim against LCB should also be dismissed with prejudice.

Respectfully submitted.

July 11, 2022                                   **SQUIRE PATTON BOGGS (US) LLP**

                                               */s/ Gassan A. Baloul*
Mitchell R. Berger (MB-4112)                   Gassan A. Baloul (GB-4473)
mitchell.berger@squirepb.com                   gassan.baloul@squirepb.com
2550 M Street, NW                              Joseph S. Alonzo (JA-1378)
Washington, DC 20037                           joseph.alonzo@squirepb.com
Telephone: (202) 457-6000                      1211 Avenue of the Americas, 26th Floor
Facsimile:  (202) 457-6315                     New York, NY 10036
                                               Telephone: (212) 872-9800
                                               Facsimile:  (212) 872-9815


                                               *Attorneys for Defendants Lebanese Canadian
                                               Bank SAL and Mohamad Hamdoun*