# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAIM KAPLAN, *et al.*,<br><br>    Plaintiffs,<br><br>against<br><br>LEBANESE CANADIAN BANK, SAL,<br><br>    Defendant. | Civil Action No. 08-cv-7253 (GBD)(KHP) |
| ESTER LELCHOOK, *et al.*,<br><br>    Plaintiffs,<br><br>against<br><br>LEBANESE CANADIAN BANK, SAL, *et al.*<br><br>    Defendants. | Civil Action No. 18-cv-12401 (GBD)(KHP) |

## PROPOSED ORDER AND ESI PLAN

**The parties in this action stipulate and agree that the following ESI Plan and [Proposed] Order shall govern the preservation, collection and production of electronically stored information and documents in this action.**

**(1)   Description of Claims/Counterclaims/Cross-Claims:**

    Both of the above-captioned actions arise out of a series of rocket attacks launched by Hezbollah towards Northern Israel in July and August 2006. All of the plaintiffs in *Kaplan* are also plaintiffs in *Lelchook*. Collectively, the plaintiffs across both actions ("Plaintiffs") assert aiding-and-abetting claims against Defendant Lebanese Canadian Bank ("LCB") under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, *et seq*. In *Lelchook*, Plaintiffs also assert aiding-and-abetting claims against Defendant Mohamad Hamdoun ("Mr. Hamdoun," and collectively with LCB, "Defendants") under the ATA. There are no counterclaims or cross-claims in either action.

- **(a)** **Plaintiffs' Estimated Monetary Damages and Description of Other Relief Sought:**

  Plaintiffs seek compensatory damages, as well as treble damages, costs and attorneys' fees, pursuant to 18 U.S.C. § 2333(a)

- **(b)** **Defendants' Estimated Damages on any Counterclaim/Cross-Claims and Description of Other Relief Sought:**

  There are no counterclaims or cross-claims in either action. Apart from the dismissal of both actions in their entirety with prejudice, LCB has only requested an award of its costs in defending both actions. *Kaplan*, Answer, ECF No. 167, at 18; *Lelchook*, Answer, ECF No. 76, at 22.

**By signing below, counsel for the parties confirm that they have factored in the potential damages and relief sought in this case, as well as the resources of the parties, to develop an ESI Plan that is proportional to the needs of this case.**

**(2)** **Meet and Confer.** Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

Date of parties' meet-and-confer conference: May 9, 2022.

*By signing below, the parties confirm that they have reviewed Judge Parker's Discussion Topics for Rule 26(f) Meeting.*

**(3)** **Preservation.**

- **(a)** **The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: (e.g., retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.)**

  **Plaintiffs:**

  The Plaintiffs are the victims and the family members of the victims of the Hezbollah rocket attacks from which this action arises. Accordingly, the only relevant documents held by the Plaintiffs *themselves* are documents relating to their injuries and damages (not liability). The damages-related documents that Plaintiffs "may use to support [their] claims" have already been produced (or, if publicly available, disclosed) by Plaintiffs to Defendants, pursuant to Rule 26(a). To the extent, if any, that Plaintiffs have additional documents or ESI relating to their injuries, it would be held in common formats on the Plaintiffs' own personal computers and devices, *e.g.* PDFs, email programs, and the like.

Plaintiffs' counsel hold documents relating to Defendants' liability. The liability-related documents held by counsel that Plaintiffs "may use to support [their] claims" have already been produced (or, if publicly available, disclosed) by Plaintiffs to Defendants, pursuant to Rule 26(a). To the extent, if any, that Plaintiffs' counsel have additional documents or ESI relating to liability, it would be held in common formats on counsel's personal computers and devices, *e.g.* PDFs, email programs, and the like.

**Preservation**: Plaintiffs' counsel have instructed Plaintiffs, since the start of this litigation, to preserve documents relevant to their claims. The individuals responsible for data preservation are the Plaintiffs themselves, and their counsel.

**Defendants:**

As set forth in the parties' Proposed Case Management Plan, given that LCB is currently undergoing liquidation proceedings, much of the electronically stored information that Plaintiffs may seek, including LCB's former client documentation, such as account-opening documentation and transactional records, is in the custody of MIDCLEAR. *Kaplan*, ECF No. 168, at 15-16; *Lelchook*, ECF No. 70, at 15-16. MIDCLEAR is not authorized to destroy these records or to modify the format in which they are stored without LCB's express consent.

LCB maintains other business records, such as internal and administrative memoranda relating to: LCB operations and corporate governance; delegation of authority and responsibility; general anti-money laundering and compliance training programs, efforts, and directives; and board and committee meeting minutes. LCB employs an administrative assistant who acts as custodian of these records and is currently the sole person with authorized access thereto. These records are maintained in paper and/or electronic form.

The electronic records in LCB's custody are stored on a personal computer ("PC") and backed up on an external hard drive. LCB does not rely on any specialized software to organize or maintain these records, which generally comprise portable document format ("PDF") files, Microsoft Word documents, and Microsoft Excel workbooks. LCB's electronic records are not uniformly organized or catalogued according to any set of criteria.

**(b)** **State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.**

The parties have not come to an agreement regarding the disclosure of information regarding "litigation hold" communications.

**(4)   Collection**

    **(a)   State the extent to which the parties have agreed on the scope of documents to be collected (e.g., custodians and files/folders, servers, databases) for search and review and agreement on methods of collection.**

The parties have not come to an agreement regarding the scope of documents to be collected or the methods of collection to be used.

    **(b)   Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:**

Plaintiffs:

Plaintiffs' general position is that ESI should and will be part of the discoverable material in these actions, and that the Parties (and third-parties from which discovery is sought) should seek to work cooperatively on any issues relating to discovery of ESI throughout the litigation, as specific discovery requests are propounded.

As discussed above, any ESI held by Plaintiffs or their counsel would be held in common formats (such as PDFs, email programs, and the like) on personal computers and devices.

Plaintiffs are seeking discovery of documents (including ESI) in these actions from the Defendants and from third-parties, but have no knowledge of to what extent the documents sought or to be sought are held as ESI, or the systems or format in which that ESI is held.

Defendants:

Defendants anticipate that materials sought by Plaintiffs, to the extent they are stored in electronic form in Defendants' custody, will consist largely or entirely of PDF files and Microsoft Word documents.

Defendants anticipate that the materials that Defendants will seek during discovery,[1] to the extent they are stored electronically, are likely maintained by Plaintiffs as emails, word processing documents, image files, PDF files, and instant messages. Defendants also may seek materials maintained by third-parties.

---

[1] *See* Proposed Case Management Plan, *Kaplan*, ECF No. 168, at 15, *Lelchook*, ECF No. 70, at 15 (detailing information that may be sought by Defendants during discovery).

**(c)    Custodians/Databases. The parties have agreed that data will be collected from the following custodians/databases for review:**

Plaintiffs:

As discussed above, (i) Plaintiffs have already produced all documents and ESI in their possession required under Rule 26(a), and (ii) any other documents relevant to these actions held by Plaintiffs or their counsel are on their personal computers or devices. Defendants have not yet served document requests on Plaintiffs, but given the above it is clear that any ESI responsive to document requests from the Defendants would be located on the personal computers and devices of the Plaintiffs or their counsel.

Defendants:

Plaintiffs have not yet served their discovery requests on Defendants, such that it is premature for Defendants to define the scope or sources of data to be collected for review. Without waiving any objections Defendants may have to Plaintiffs' document requests, Defendants are collecting and reviewing electronic data in LCB's custody that is believed by LCB and/or the data's custodian to contain information that may be responsive to Plaintiffs' requests.

**(5)    Search and Review**

**(a)    The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. (Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc.) To the extent the parties have reached agreement as to search and review methods, provide details below:**

Plaintiffs:

Plaintiffs' position on the appropriate methodology for searching and reviewing their electronic data will necessarily depend on the discovery requests to be served by Defendants. However, given the fact that any responsive data would in any case be located on personal computers and devices, the Plaintiffs anticipate that manual search and review will likely be the appropriate method.

Defendants:

While Defendants' position on the appropriate methodology for searching and reviewing Defendants' electronic data will depend on the discovery requests to be served by Plaintiffs, Defendants' current position is that manual search and

review of Defendants' electronically stored information will likely be the appropriate methodology given that the custodian of LCB's electronic records has access to sufficient information regarding their contents and organization to identify potentially responsive information for review by Defendants' counsel. Furthermore, given that LCB is currently in liquidation, Defendants have limited information-technology tools available to them for conducting searches of electronic data.

**(6) Production**

**(a) Limitations on Production. The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) date ranges for which potentially relevant data will be drawn; (iii) timing of productions (including phased discovery or rolling productions); (iv) prioritization of review; and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:**

The parties have not come to an agreement regarding the above factors relating to their scope of production. Defendants' position is that the date ranges for which potentially relevant data may be drawn should be limited to the time-period of January 1, 2004 through August 14, 2006. Plaintiffs disagree with the date range suggested by Defendants, but Plaintiffs propose that (given the absence of any live dispute on this issue at this time), resolution of any future dispute regarding the appropriate date range for a specific discovery request propounded in these actions should be done, if and when it arises.

**(b) Form(s) of Production and Metadata to be produced:**

**(1) The parties have readied the following agreements regarding the form(s) of productions and metadata fields to be produced:**

Plaintiffs:

Production of ESI by Plaintiffs will likely be made in PDF or native format. Plaintiffs productions will not include metadata unless (i) metadata is specifically requested by the Defendants, and (ii) the Plaintiffs do not object to the production of metadata or the Court overrules any such objection. Plaintiffs disagree with Defendants' request (below) for a sweeping, a priori exemption from production of metadata.

Defendants:

Any document productions by Defendants will be made in PDF, TIFF, or native format, without any accompanying metadata.

**(2)** **Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):**

At this stage, the parties have not agreed on any exceptions to the forms of production identified above.

**(3)** **Methods to expedite review. The parties have discussed and agree to the following (e.g., de-deduplication, email threading, etc.)**

At this stage, the parties have not agreed on any methods to expedite the review of electronic data.

**(4)** **Privileged Material.**

**(a)** **Identification. The parties have agreed to the following method(s) for the identification (e.g., form of logs, acceptability of categorical logs for certain categories of communications, production of metadata log in lieu of or in advance of more limited document by document log, categories of documents that need not be logged, disclosure of number of documents withheld pursuant to certain privileges in lieu of document by document log), and the redaction of privileged documents:**

Given that the parties have not yet served any discovery requests, it is not possible to determine the number and types of electronic records that may be privileged or subject to other protections. As a result, the parties have not agreed on appropriate methods for identifying and redacting privileged documents at this stage of discovery.

**(b)** **Inadvertent Production / Claw-Back Agreements. Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.) (the parties are referred to the Rule 502 order in Judge Parker's form confidentiality order):**

The parties have come to an agreement concerning the inadvertent production of privileged documents, as reflected in the proposed protective order filed by the parties today.

**(c)** **The parties have discussed a 502(d) Order. Yes: X; No _**

The parties have discussed and agreed to a Rule 502(d) non-waiver provision, as reflected paragraph 10 of the proposed protective order filed by the parties today.

     **The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.**

**(5)**  **Cost of Production. The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:**

**(1)**  **Costs:**

Plaintiffs:

 Given that Defendants have not yet served any discovery requests on Plaintiffs, it is premature to reach any estimate of the costs that would be associated with the production of electronically stored information.

Defendants:

 Given that Plaintiffs have not yet served any discovery requests on Defendants, it is premature to reach any estimate of the costs that would be associated with the production of electronically stored information.

**(2)**  **Cost Allocation. The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:**

 The parties have not reached any agreement on cost-shifting or sharing.

**(3)**  **Cost Savings. The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:**

 The parties have not reached any agreement on other cost-saving measures.

**The preceding constitutes the agreement(s) reached between the parties to certain matters concerning electronic discovery as of this date. Counsel certify that in connection with preparation of this ESI Plan and [Proposed] Order they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.**

| **Party:** | **By:** |
|---|---|
| Plaintiffs | /s/ Robert J. Tolchin |
| | The Berkman Law Office, LLC |
| | 829 East 15th Street |
| | Brooklyn, New York 11230 |
| | 718-855-3627 |
| | rtolchin@berkmanlaw.com |

| **Party:** | **By:** |
|---|---|
| Defendants Lebanese Canadian Bank SAL and Mohamad Hamdoun | */s/ Gassan A. Baloul* |
| | Gassan A. Baloul (GB-4473) |
| | gassan.baloul@squirepb.com |
| | Mitchell R. Berger (MB-4112) |
| | mitchell.berger@squirepb.com |
| | SQUIRE PATTON BOGGS (US) LLP |
| | 2550 M Street, NW |
| | Washington, DC 20037 |
| | Telephone: (202) 457-6000 |
| | Facsimile: (202) 457-6315 |
| | |
| | Joseph S. Alonzo (JA-1378) |
| | joseph.alonzo@squirepb.com |
| | SQUIRE PATTON BOGGS (US) LLP |
| | 1211 Avenue of the Americas, 26th Floor |
| | New York, NY 10036 |
| | Telephone: (212) 872-9800 |
| | Facsimile: (212) 872-9815 |

**Dated:           , 2022**                          **SO ORDERED:**

                                                                   **Katharine H. Parker**
                                                                   **United Stated Magistrate Judge**